**INTERNATIONAL HOME TEXTILE, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 97–1420.

United States Court of Appeals, Federal Circuit.

Sept. 2, 1998.

Peter S. Herrick, Miami, FL, argued, for plaintiff-appellant.

Bruce N. Stratvert, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, New York City, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Sheryl A. French,

Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Patrick D. Gill and Eleanore Kelly–Kobayashi, Rode & Qualey, New York City, for amicus curiae, Hampton Industries, Inc.

Before MICHEL, PLAGER, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

International Home Textile, Inc., (International Home) appeals the judgment of the United States Court of International Trade in *International Home Textile, Inc. v. United States*, No. 97–31, 1997 WL 129117 (CIT Mar. 18, 1997), sustaining the United States Customs Service (Customs) classification of the subject merchandise under subheadings 6103.42.10 and 6105.10.00 of the Harmonized Tariff Schedule of the United States (HTSUS). This case was submitted for our decision following oral argument on August 4, 1998. Because we hold that the Court of International Trade did not erroneously interpret the tariff provisions relating to the importation of men's loungewear garments and did not clearly err in either its findings of fact concerning the principal uses of the garments or the correctness of the Customs classification, we affirm.

## BACKGROUND

The material facts of this case are not in dispute. International Home, an importer of apparel products, imported various men's loungewear garments between 1993 and 1994. Upon importation, Customs classified certain of the garments as "[t]rousers, breeches and shorts" under HTSUS subheading 6103.42.10 and others as "[m]en's or boys' shirts" under HTSUS subheading 6105.10.00. The Customs classifications resulted in rates of duty equaling 17.1 percent *ad valorem* for those items classified as trousers and shorts and 21 percent for those items classified as shirts. International Home challenged these classifications in the

**1380**

Court of International Trade asserting that all of the garments are properly classifiable as "similar articles" under HTSUS heading 6107. International Home's preferred classification is under HTSUS subheading 6107.91.0040 which mainly describes robes and dressing gowns and has a corresponding duty of 9.3 percent. Alternatively, International Home asserts that the proper classification is HTSUS subheading 6107.21.00 which mainly describes pajamas and other nightwear and has a corresponding duty of 9.5 percent. After a trial on the merits, the Court of International Trade upheld the Customs classifications and entered judgment for the United States. The reader is referred to the comprehensive opinion of the trial court for further details.

International Home timely appealed to this court. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(5) (1994). Although the judgment appealed from is more than sixteen months old, the appeal was not ready for argument and submission until August 1998.[1]

## DISCUSSION

■ Determining whether imported merchandise has been properly classified involves a two-step process. *See Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994). The first step involves "ascertaining the proper meaning of specific terms in the tariff provision." *Id.* Our review is *de novo* for legal correctness. The second step presents a question of fact: "determining whether the merchandise at issue comes within the description of such terms as properly construed." *Id.* Here, our review is for clear error. The ultimate question as to whether the merchandise has been properly classified, however, remains a question of law. *See id.; see also Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363 (Fed.Cir. 1998) (further clarifying the two-step inquiry).

I.

■ International Home's argument on appeal is that the Court of International Trade incorrectly upheld the Customs classification of the loungewear at issue as a result of its incorrect interpretation of the scope of HTSUS heading 6107. According to International Home, the Court of International Trade should have found that the loungewear at issue was correctly classifiable under HTSUS heading 6107 because each item of the loungewear is a "similar article" that is *ejusdem generis* with the exemplars listed under that heading. They include "[m]en's and boys' underpants, briefs, nightshirts, pajamas, bathrobes, and dressing gowns." The Court of International Trade found, on the basis of documents and testimony of witnesses including experts, that the essential characteristic common to all of these exemplars was "a sense of privateness ... or private activity." *International Home,* slip op. at 5. International Home asserts, however, that the essential characteristics of these exemplars are that they be worn in and around the home, and next to the skin.

We agree with the Court of International Trade that the essential characteristics argued by International Home do not fit the exemplars under HTSUS heading 6107. International Home concedes that the essential characteristics of a garment can be determined by its principal use or primary function. As the trial court pointed out, "not all of the exemplars are worn next to the skin ...; not all of the exemplars are worn as sleepwear ...; and not all of the exemplars are meant to be worn only in and around the home." *Id.* While we do not disagree that being worn next to the skin and being worn in and around the home may be descriptive of these exemplars in some circumstances, we disagree that these are their essential characteristics. Looking to the Court of International Trade's opinion, we agree, for example, that bathrobes are not always worn next to the skin and underwear, while nor-

---

1. Much of the delay is attributable to International Home's requests for two extensions in order to    file a reply brief.

mally out of view of the general public, is generally worn out of the house. But all the exemplars in their principal use evoke a sense of privacy. Therefore, we conclude that the Court of International Trade's interpretation of HTSUS heading 6107 was legally correct.

## II.

The second step in determining whether the merchandise was properly classified requires a factual inquiry by the trial court focusing on the nature of the imports, which we review for clear error. *See Universal Elecs., Inc. v. United States*, 112 F.3d 488, 493 (Fed.Cir.1997). Based upon the testimony and the trial exhibits, the trial court found that it was not unusual or inappropriate to wear the loungewear at issue during informal social occasions and at other, non-private occasions, including outside the home.

The trial court also relied on the plain meaning of the exemplars listed under HTSUS subheadings 6103.42.10 and 6105.10.00 in finding that these loungewear items are properly classified as shorts, trousers, and shirts. International Home concedes that the loungewear can be described as such but points out that for classification purposes, the tariff schedules do not contemplate all forms of shirts, trousers, and shorts under the specific provisions for those items. *See Mast Indus., Inc. v. United States*, 9 C.I.T. 549, 553 (1985), *aff'd*, 786 F.2d 1144, 4 Fed. Cir. (T) 79 (Fed.Cir.1986). We hold that there was ample evidence to support a classification of the loungewear under HTSUS headings 6103 and 6105. In particular, the testimony of witnesses, not only for the government, but indeed for both parties, established that the subject loungewear was distinct from underpants, briefs, nightshirts, pajamas, dressing gowns, and bathrobes, could be worn outdoors and in public view, could be worn while exercising outdoors or away from home, and could be worn for informal entertaining. By contrast, underwear, pajamas and bathrobes, etc., would not normally be so used. None of these findings can be said to be clearly erroneous. Accordingly, we find no clear error in the Court of International Trade's determination as to the nature of the loungewear. Therefore, the subject merchandise was properly classified by Customs under HTSUS headings 6103 and 6105, as properly construed, and not under heading 6107 which is indeed limited to garments for private uses.

We have considered International Home's other arguments such as its reliance on the Explanatory Notes of HTSUS but find them without merit and not warranting discussion here.

## CONCLUSION

Because there was no legal error in the Court of International Trade's interpretations of the four relevant tariff provisions, nor clear error in any of its fact findings or ruling that the merchandise at issue was properly classified under HTSUS 6103.42.10 and 6105.10.00, the judgment appealed is

*AFFIRMED.*