**VWP OF AMERICA, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–1048.

United States Court of Appeals,
Federal Circuit.

April 21, 1999.

James S. Kelly, Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellant. Of counsel on the brief was Alan Goggins.

Saul Davis, Senior Trial Counsel, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Joseph I. Leibman, Attorney In Charge, International Trade Field Office, of New York, New York, and David M. Cohen, Director, Civil Division, of Washington, DC. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Before MICHEL, SCHALL, and GAJARSA, Circuit Judges.

SCHALL, Circuit Judge.

Victor Woolen Products of America, Inc. ("VWPA") appeals the decision of the United States Court of International Trade in *VWP of America, Inc. v. United States*, 980 F.Supp. 1280 (CIT 1997). In its decision, the court upheld the determination of the United States Customs Service ("Customs") that woolen melton fabrics imported by VWPA from Canada should be appraised based on the price paid for the fabrics by customers of VWPA in the United States. Customs rejected the contention of VWPA that the fabrics should be appraised based on the price paid for them by VWPA to its supplier and parent company, Victor Woolen Products, Ltd. of Quebec, Canada ("VWPC"). The statute that governs the valuation of imported merchandise for purposes of appraisal by Customs is 19 U.S.C. § 1401a.[1] Because the Court of International Trade erred in its analysis of the pertinent requirements of § 1401a and because it failed to make necessary findings of fact, we vacate and remand.

## BACKGROUND

### I.

Imported merchandise must be appraised so that the final amount of duty to be paid on the merchandise can be fixed and entries of the merchandise can be liquidated. 19 U.S.C. § 1500. By law, Customs is required to appraise imported merchandise in the manner set forth in 19 U.S.C. § 1401a. *See* 19 U.S.C. § 1500(a). Section 1401a(a)(1) sets forth one primary method of valuation and five secondary methods. The primary method of valuation is the "transaction value" of the merchandise provided for under 19 U.S.C. § 1401a(b)(1). *Id.* § 1401a(a)(1)(A). Under § 1401a(b)(1), "[t]ransaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States," plus certain specified amounts. If transaction value, as defined in § 1401a(b)(1), cannot be determined or cannot be used, then Customs must appraise the imported merchandise by looking to the secondary valuation methods in the order listed in § 1401a(a)(1) until an appraisal is obtained. *See id.* § 1401a(a)(1).

The statute provides that the transaction value between a related buyer and seller may only be used to appraise imported merchandise when certain conditions are met.

> The transaction value between a related buyer and seller is acceptable ... if an examination of the circumstances of

---

1. Unless otherwise indicated, all references are to the 1994 version of the United States Code.

the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported merchandise closely approximates—

(i) the transaction value of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States; or

(ii) the deductive value or computed value for identical merchandise or similar merchandise;

but only if each value referred to in clause (i) or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

19 U.S.C. § 1401a(b)(2)(B).

The persons and entities who are deemed "related" for purposes of the statute are listed in 19 U.S.C. § 1401a(g)(1). A corporation and its wholly-owned subsidiary are related parties. *See id.* § 1401a(g)(1)(F).

## II.

The merchandise at issue in this case is melton fabric manufactured by VWPC and imported into the United States between November of 1992 and January of 1993 by VWPA. *See VWP of America, Inc. v. United States,* 980 F.Supp. at 1282. Melton is a heavy woolen fabric with a smooth finish that is used primarily in the apparel industry for articles such as varsity jackets. Such jackets, which have melton wool bodies with leather sleeves, frequently are worn by high school athletes.

VWPA is VWPC's wholly-owned U.S. subsidiary. It is a Delaware corporation. In November of 1989, it became the exclusive U.S. distributor and importer of melton fabrics produced by VWPC. *See id.* Typically, in a three-tier transaction, VWPA purchased the fabrics from VWPC and then sold them to U.S. buyers. *See id.* From 1989 to 1991, the terms of sale

between VWPC and VWPA and between VWPA and its U.S. customers were F.O.B. the Canadian factory. *See id.* Under these terms, VWPA took legal title to, but not physical possession of, the merchandise prior to its sale to U.S. buyers. The U.S. buyers took physical possession of the merchandise at VWPC's loading dock in Canada. During this period, a third party, Concept III, served as the U.S. sales agent for VWPA. *See id.*

In 1990, Customs initiated an audit of the transactions between VWPC and VWPA. *See id.* This audit resulted in the issuance of Customs Headquarters Ruling Letter No. HQ 544658 (Mar. 26, 1991). In that ruling, Customs asserted that "there must be a bona fide sale of the imported merchandise to be appraised under transaction value." *Id.* at 3. Customs determined that there were no bona fide sales between VWPC and VWPA. *See id.* at 5. It reasoned that because sales from VWPC to VWPA were F.O.B. the Canadian factory, and because sales from VWPA to the U.S. buyers were F.O.B. the Canadian factory, risk of loss never passed to VWPA, but instead passed directly from VWPC to the U.S. buyers. *See id.* Because title passed directly from VWPC to U.S. buyers, Customs determined that the prices paid by U.S. buyers constituted the proper basis for transaction value. *See id.*

In 1991, VWPA changed the terms of sale for its U.S. customers to F.O.B. Jackman, Maine, or other U.S. port of entry. The terms of sale between VWPC and VWPA, however, remained F.O.B. the Canadian factory. *See VWP,* 980 F.Supp. at 1282. Under these new terms, VWPA was required to transport the melton fabrics from VWPC's loading dock in Canada to a U.S. port of entry. During this time, Concept III continued to serve as VWPA's U.S. sales agent.

In due course, VWPA asked Customs to reconsider its 1991 ruling. *See id.* Customs did so and concluded that transactions between VWPC and VWPA under the new terms of sale constituted bona fide

sales. *See* HQ 544745, at 5 (Feb. 19, 1992). Nonetheless, Customs reaffirmed its original determination that the melton fabrics should be valued based on the sales price between VWPA and its U.S. buyers. Customs reasoned that it was sales to those buyers that most directly caused the fabrics to be exported to the United States. *See id.* at 7. Accordingly, Customs liquidated the merchandise based on the price charged by VWPA to its U.S. buyers. VWPA filed a protest on May 5, 1993, which was denied on August 8, 1993.

### III.

On December 16, 1993, VWPA brought an action in the Court of International Trade, pursuant to 28 U.S.C. § 1581(a), contesting the denial of its protest of Customs' valuation determination. VWPA asserted that the melton fabrics should have been appraised based on the sales price between VWPC and VWPA. In making this argument, VWPA did not claim that the circumstances of the sales between VWPC and VWPA indicated that the relationship between VWPC had not influenced the prices paid by VWPA for the melton fabrics. *See* 19 U.S.C. § 1401a(b)(2)(B). Rather, VWPA argued that sales prices between VWPC and VWPA constituted acceptable transaction values under § 1401a(b)(2)(B)(i) because they closely approximated the sales prices of identical or similar merchandise sold by Cookshiretex, a Canadian supplier of melton fabrics, to Lou Levy & Sons ("Levy"), a U.S. corporation. In the alternative, it argued that the VWPC–VWPA sales prices constituted acceptable transaction values under § 1401a(b)(2)(B)(ii) because they closely approximated the deductive or computed value for identical or similar merchandise.

Following a trial, the Court of International Trade held that the subject entries were correctly valued by Customs based upon the price between VWPA and its customers in the United States. The court therefore upheld Customs' rejection of VWPA's protest. The court based its decision on the conclusion that the transactions between VWPC and VWPA were not sales for exportation to the United States for purposes of 19 U.S.C. § 1401a(b)(1). See *VWP,* 980 F.Supp. at 1286–87.

In its decision, the court stated that its first inquiry was to ascertain which transactions directly caused importation of the melton fabrics into the United States. *See id.* at 1283. The court observed that "[e]mbedded" in this inquiry was a determination of whether the transactions between VWPC and VWPA were "arm's length" bona fide sales. *Id.* at 1283–84. Starting from the premise that "transaction value [under 19 U.S.C. § 1401a(a)(1)(A)] cannot be based on a transaction that is found not be a sale," *id.* at 1284, the court concluded that the transactions between VWPC and VWPA were not bona fide sales. *See id.* at 1286. The court reached this conclusion because it determined that the melton fabric produced by VWPC "was not freely sold or offered for sale to all of those who cared to buy it in the U.S. market in the ordinary course of trade." *Id.* at 1285. The court found that this was the case because, "[i]n order for U.S. customers to obtain the melton fabric produced by VWPC, purchases would have to be made with VWPA or its agent Concept III." *Id.* The court based its use of the test of "freely sold or offered for sale" upon the decision of the Court of Customs and Patent Appeals in *United States v. Getz Brothers & Co.,* 55 C.C.P.A. 11, 1967 WL 8923 (1967), a case decided under sections 402(b) and 402a(d) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943 (commonly referred to as the "export value statute"). *See* 19 U.S.C. § 1402(d) (1964).

In finding the absence of an arm's length bona fide sale, the court also relied upon the decision of the Court of Customs and Patent Appeals in *Bjelland & Co. v. United States,* 52 C.C.P.A. 38, 1965 WL 8296 (1965). In *Bjelland,* another case

decided under the export value statute, the court set forth various factors to be examined in determining whether transactions between a seller and a purchaser are at arm's length.[2] The Court of International Trade determined that application of the *Bjelland* factors resulted in "a formidable showing that the transaction[s] between VWPC and VWPA [were] not concluded at arm's length." *VWP*, 980 F.Supp. at 1285. In that regard, the court focused on VWPA's minimal presence in the United States and the finding that VWPA accepted prices dictated by VWPC. *See id.* at 1285–86. According to the court, VWPA was "merely a U.S. agent or alter ego for VWPC." *Id.* at 1285. Thus, the court found that VWPC and VWPA were "one and the same for purposes of administration of the import statutes implicated here." *Id.* at 1286. Accordingly, the court reasoned, valuation of the melton fabrics should be based on the value of sales between VWPA and its U.S. customers. *See id.* In other words, the court concluded that a sale of melton fabrics by VWPC to VWPA could not establish a transaction value for the fabrics for purposes of 19 U.S.C. § 1401a(a)(1)(A) because in fact there was no such sale. In the court's view, a sale did not occur until VWPA sold the fabrics to one of its U.S. customers.

The court then went on to decide whether, as VWPA argued, sales by VWPC to VWPA could serve as the basis for appraising the melton fabrics because the value of those sales approximated "the transaction value of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States," as contemplated by 19 U.S.C. § 1401a(b)(2)(B)(i). In that regard, the court considered the evidence offered by VWPA relating to the Cookshiretex–Levy transactions. *See id.* at 1287. The court concluded that, as far

as the Cookshiretex–Levy transactions were concerned, VWPA had failed to provide a sufficient showing that expenses such as packing costs, sales commissions, assists, royalties, and rebates were properly taken into account in calculating Levy's transaction costs. *See id.* The court therefore held that even if VWPC's sales to VWPA could be viewed as constituting "sales for exportation to the United States" and therefore could form the basis for a transaction value under 19 U.S.C. § 1401a(a)(1)(A), that transaction value could not be used for purposes of appraising the melton fabrics because the requisite comparison with the transaction value of identical or similar merchandise required under § 1401a(b)(2)(B)(i) could not be performed. *See id.*

Finally, in a like vein, the court rejected VWPA's alternative argument that the prices used in transactions between VWPC and VWPA could serve as the appraised value of the melton fabrics because those prices closely approximated "the deductive value or computed value for identical merchandise or similar merchandise," as set forth in 19 U.S.C. § 1401a(b)(2)(B)(ii). On this point, VWPA presented evidence relating to the deductive value of the melton fabrics manufactured by VWPC. The court found, however, that the deductive values advanced by VWPA were based on suspect figures and inconsistent allocations of costs. *See id.* at 1288. Accordingly, it concluded that the deductive values submitted by VWPA with respect to the melton fabrics did not provide reliable comparisons to the value of the transactions between VWPC and VWPA and therefore were not acceptable. *See id.*

VWPA now appeals the court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

---

**2.** The factors articulated in *Bjelland* are whether the purchaser (1) buys the subject merchandise only from the seller, (2) pays for the merchandise on delivery, (3) maintains warehouses, (4) guarantees its customers' stock against price decreases without help from the seller, (5) furnishes product liability insurance, (6) assumes responsibility for returns, and (7) accepts the prices dictated by the seller without negotiation. *See* 52 C.C.P.A. at 46.

## DISCUSSION

 The issue in this case is whether the Court of International Trade erred in concluding that Customs properly valued the melton fabrics based upon transaction values determined from sales between VWPA and its U.S. buyers, as argued by the government, rather than based upon transaction values determined from sales between VWPC and VWPA, as argued by VWPA. We review *de novo* the court's interpretation of the valuation statute, 19 U.S.C. § 1401a. *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed.Cir. 1995). We review the court's factual findings for clear error. *International Home Textile, Inc. v. United States,* 153 F.3d 1378, 1380 (Fed.Cir.1998).

 On appeal, VWPA argues first that the Court of International Trade erred as a matter of law when it determined that transactions between VWPC and VWPA were not sales for exportation to the United States under 19 U.S.C. § 1401a(b)(1). According to VWPA, the court went astray by relying upon *Getz* and *Bjelland* and thereby incorporating into the statute requirements that existed under prior law but that Congress excluded from § 1401a. For its part, the government responds that, while the Court of International Trade "may have applied certain legal criteria that are questionable," the court's factual findings are not clearly erroneous. The government argues that the Court of International Trade properly found that transactions between VWPC and VWPA were not at arm's length.

The government is correct that if sales by VWPC to VWPA cannot serve as the basis for transaction value, then transaction value must be based upon sales by VWPA to its U.S. customers. *See* 19 U.S.C. § 1401a(a)(1)(B). We agree with VWPA, however, that the Court of International Trade erred in its analysis of the requirements of § 1401a.

As the Court of International Trade itself recognized, *Getz* and *Bjelland* were decided under the export value statute, which was repealed in 1979 by the Trade Agreements Act of 1979, Pub.L. No. 96–39, 1979 U.S.C.C.A.N. (93 Stat.) 144. Before the Trade Agreements Act, imported merchandise was appraised on the basis of export value:

> [T]he export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, ·at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

19 U.S.C. § 1401a(b) (1964), *Getz,* 55 C.C.P.A. at 15.

In *Generra Sportswear Co. v. United States,* 905 F.2d 377, 380 (Fed.Cir.1990), we referred to "[t]he critical difference" between "export value" under pre–1979 law and "transaction value" under the present statute. In that context, we quoted with approval material from the legislative history of the Trade Agreements Act:

> The use of transaction value as the primary basis for customs valuation will allow use of the price which the buyer and seller agreed to in their transaction as the basis for valuation, rather than having to resort to the more difficult concepts of "freely offered," "ordinary course of trade," "principal markets of the country of exportation," and "usual wholesale quantities" contained in existing U.S. law.

S.Rep. No. 96–249, 96th Cong. 1st Sess. at 119 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 505. Later, in *Nissho Iwai American Corp. v. United States,* 982 F.2d 505 (Fed. Cir.1992), we stated, "[W]e can discern

nothing in the legislative history of the 1979 amendment that suggests that Customs, in determining the transaction value of imported merchandise, should undertake an investigation focusing on which of two transactions most directly caused the exportation." 982 F.2d at 511.

In enacting § 1401a, Congress provided a particular methodology for determining whether a transaction between related parties provides an acceptable transaction value. The Senate Report relating to the Trade Agreements Act states that:

> Regarding related-party transactions, significant changes to current law would be made. Under new section 402, the fact that the buyer and seller are related would not, as is now the case, almost automatically preclude the use of transaction value; rather the Customs Service would use alternative methods of determining the acceptability of using transaction value in such cases.

S.Rep. No. 96–249, at 120–21, 1979 U.S.C.C.A.N. at 506–07.

Under the statutory scheme, "transaction value," as provided for in 19 U.S.C. § 1401a(b)(1), is the primary method of valuing imported merchandise. 19 U.S.C. § 1401a(a)(1)(A). Under § 1401a(b)(1), "[t]he transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States," plus certain specified amounts. If merchandise is sold for exportation to the United States and the sale is by a corporation to a subsidiary, i.e., the transaction is between related parties, the value of the transaction, as calculated pursuant to § 1401a(b)(1)(A), may serve as the appraised value of the merchandise if any of the criteria of 19 U.S.C. § 1401a(b)(2)(B) are met. Section 1401a(b)(2)(B) establishes two methods for determining whether the value of a transaction between a related buyer and seller may serve as the basis for appraising imported merchandise. Under the first method, if an examination of the circumstances of the sale of the imported mer-

chandise indicates that the relationship between the related parties did not influence the price, the transaction value is acceptable for purposes of § 1401a(a)(1)(A). The second method involves comparing the transaction value between the related buyer and seller to determine whether it "closely approximates" either the transaction value of identical or similar merchandise in sales to unrelated buyers in the United States or the deductive or computed value for identical or similar merchandise. See 19 U.S.C. §§ 1401a(b)(2)(B)(i-ii). These two methods for determining the acceptability of the value of a transaction between related parties are intended to "insure that a particular transaction is *bona fide* and 'at arm's length' before the transaction value standard will apply." See S.Rep. No. 96–249, at 115, 1979 U.S.C.C.A.N. at 501.

Customs itself has taken the position that § 1401a(b)(2)(B) sets forth the test for determining the acceptability of related party transactions. In HQ 546357 (Aug. 26, 1997), it stated: "In the instant case, the importer, middleman and manufacturer are related persons.... [T]he [Trade Agreements Act] provides that the acceptability of transaction value can be established through an examination of the circumstances of the sale in question. 19 U.S.C. § 1401a(b)(2)(B).... Accordingly, transaction value may be based on the manufacturer-middleman sale." *Id.* at ——— —.

That Congress intended the two methods set forth in § 1401a(b)(2)(B) to be the exclusive means of determining the acceptability of a transaction value between related parties is supported by the part of § 1401a that explains what persons shall be treated as "persons who are related." Section 1401a(g)(1) provides as follows:

> (1) For purposes of this section, the persons specified in any of the following subparagraphs shall be treated as persons who are related:
>
> (A) Members of the same family, including brothers and sisters (wheth-

er by whole or half blood), spouse, ancestors, and lineal descendants.

(B) Any officer or director of an organization and such organization.

(C) An officer or director of an organization and an officer or director of another organization, if each such individual is also an officer or director in the other organization.

(D) Partners.

(E) Employer and employee.

(F) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.

(G) Two or more persons directly or indirectly controlling, controlled by, or under common control with any person.

19 U.S.C. § 1401a(g)(1).

As can be seen from the quoted provision, persons in the closest of relationships (brothers and sisters, partners, an employer and employee) are related parties who may engage in a transaction which can serve as the basis for transaction value. If, under the statute, a brother may sell to a sister or a partner may sell to a partner, and thereby engage in a transaction which may serve as the basis for transaction value, it seems logical that a corporation and a subsidiary having a relationship identical to that which exists between VWPC and VWPA may do the same. In other words, we see no reason why a sale from VWPC to VWPA may not serve as the basis for transaction value so long as (i) VWPC and VWPA qualify as "persons who are related" under 19 U.S.C. § 1401a(g)(1)(F) and (ii) the acceptability of the sale for that purpose is established by one of the methods set forth in § 1401a(b)(2)(B). Thus, the Court of International Trade erred by expanding its analysis beyond the parameters of § 1401a(b)(2)(B) and considering factors, articulated in *Getz* and *Bjelland,* that were

relevant under the now-superseded export value statute. It was this erroneous approach that led the court to reject transactions between VWPC and VWPA on the ground that VWPA was "the agent or alter ego" of VWPC.

■ The Court of International Trade clearly was concerned by the extent to which VWPC controlled VWPA and set the prices charged by VWPA to its U.S. customers. However, the fact that a parent corporation controls a subsidiary and dictates the price that the subsidiary charges for merchandise it sells does not necessarily mean, under the statute, that the price may not serve as the basis for transaction value. Section 1401a(b)(2)(B) provides that "[t]he transaction value between a related buyer and seller is acceptable ... if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; *or* if the transaction value of the imported merchandise closely approximates" one of the alternative test values. (emphasis added). In other words, even if a parent does control a subsidiary and dictates sales terms to it, the resulting transaction value will be acceptable if either of two conditions are met.

■ In arguing that we should affirm, the government states that "[t]he fact that VWPA is clearly merely a paper company completely controlled by [VWPC] and its officers demonstrates that the real transactions here which effect a proper [transaction value] are the prices to the U.S. customer from [VWPC] through its agent or alter ego VWPA." The government's reference to "a paper company" suggests the argument that Customs properly disregarded the transactions between VWPC and VWPA because VWPA is nothing more than a fictitious entity, created solely for purposes of evading the trade laws. We agree with the government to the extent it is arguing that when Customs determines transac-

tion value, it may properly ignore "sales" between a foreign corporation and a fictitious, or "paper," U.S. subsidiary. Needless to say, a transaction that is a sham, for example, because one of the parties to the transaction is in fact a nonexistent fraudulent entity, may not properly serve as the basis for transaction value under 19 U.S.C. § 1401a(a)(1). Such an entity could not properly qualify as one of two or more related "persons" under 19 U.S.C. § 1401a(g)(1). Neither could such an entity participate in a sale of merchandise for exportation to the United States for purposes of 19 U.S.C. § 1401a(b)(1). *See* Section II below.

The Court of International Trade, however, did not base its decision on the finding that sales by VWPC to VWPA amounted to sham transactions. The court's statement that VWPA was "merely a U.S. agent or alter ego for VWPC" must be understood in context. Thus, the court stated the basis for its decision as follows:

> Applying the tests for bona fide sales for importation into the U.S. established in ... *Getz* [and] *Bjelland* ... to the instant case, the Court finds that there was one *bona fide* sale, the sale between VWPC and its U.S. customers which directly caused the importation into the U.S. Because of the evidence regarding the nature of the relationship between VWPC and VWPA, the Court finds that the two companies are one and the same for purposes of administration of the import statutes implicated here. Therefore, the Court finds that the valuation of imported melton fabric is correctly based on the transaction value of the sale between VWPA and its U.S. customers since VWPC effectively is VWPA.

980 F.Supp. at 1286.

We read the Court of International Trade as concluding erroneously that, based upon the application of standards set forth in *Getz* and *Bjelland,* transactions between VWPC and VWPA could not serve as the basis for transaction value

under 19 U.S.C. § 1401a(a)(1)(A). We do not read the court as having concluded that sales by VWPC to VWPA could not serve as the basis for transaction value because they were sham transactions. In any event, the provisions of the statute, when properly interpreted, serve to prevent sham transactions. A sale by a corporation to "a subsidiary" cannot serve as the basis for transaction value unless (i) the parent corporation and the subsidiary properly qualify as "persons who are related" under 19 U.S.C. § 1401a(g)(1)(F) and (ii) the acceptability of the sales price as a transaction value is established by one of the methods set forth in 19 U.S.C. § 1401a(b)(2)(B). In this case, it is undisputed that VWPA and VWPC qualify as "persons who are related" under the statute.

Our conclusion as to the basis upon which the Court of International Trade decided this issue is reinforced when we consider the arguments that were made to the court and the record that was before it. Before the Court of International Trade, the government argued that "VWPA was the selling agent or alter ego" of VWPC in the United States. In making this argument, the government pointed to VWPA's limited physical presence in the United States. Specifically, the government noted that, while VWPA was duly incorporated and in good standing in Delaware and had a bank account in Maine and a post office box there that was maintained by its customs broker, it did not have its own warehouse or offices in the United States. The government also noted that VWPA's officers were officers of VWPC, with their salaries paid by VWPC and charged back to VWPA. Accordingly, the government urged that, even if VWPA did have a "separate corporate existence," VWPC "possessed complete control" over its operations. In other words, the government articulated the same concerns about VWPC's control of VWPA that the court expressed in its decision. At the same time, however, the government acknowl-

edged that Customs itself had "stated that the transaction between [VWPC] and VWPA was a *bona fide* sale." In addition, the government did not argue that VWPC and VWPA failed to qualify as "persons who are related" under 19 U.S.C. § 1401a(g)(1)(F).

For its part, VWPA acknowledged the facts asserted by the government. However, it pointed to additional facts, which it also notes on appeal, in arguing in support of the validity of the transactions between VWPC and itself. Thus, VWPA noted that Coopers & Lybrand, its independent auditors, had determined that VWPA had paid VWPC appropriate fees for the services that it received from VWPC. VWPA also raised the following points: that it accepted sales orders from its U.S. customers without prior approval by VWPC; that it took delivery from VWPC at the factory in accordance with the F.O.B. plant terms of sale; that it created its own sales literature; that it maintained its own order files and issued its own purchase orders and instructions to VWPC; and that it earned profits on its resales that varied with each individual set of purchase and resale transactions. Significantly, the Court of International Trade did not reject these assertions, and the government does not challenge them on appeal. For the foregoing reasons, we see no basis in the record for concluding that VWPC's sales to VWPA were sham transactions or that the Court of International Trade viewed them as such.

 In sum, the Court of International Trade erred when it held that VWPC and VWPA were "one and the same" and that, as a result, sales by VWPC to VWPA could not serve as the basis for transaction value for purposes of 19 U.S.C. § 1401a(a)(1)(A). In determining that transactions between VWPC and VWPA were not viable, the court applied incorrect standards, specifically, standards relevant under the now-superseded export value statute. The correct standards are those set forth in the provisions of 19 U.S.C.

§ 1401a discussed above. In that regard, it is undisputed that VWPC and VWPA are "persons who are related" under 19 U.S.C. § 1401a(g)(1)(F). Accordingly, contrary to the holding of the Court of International Trade, they are "not one and the same." Consequently, we hold that sales by VWPC to VWPA may serve as the basis for transaction value for purposes of appraising the imported melton fabrics under 19 U.S.C. § 1401a(a)(1), provided (i) that such sales satisfy the requirements of 19 U.S.C. § 1401a(b)(1) and (ii) that the acceptability of the transaction value arising from such sales is established under 19 U.S.C. § 1401a(b)(2)(B). It is to those questions that we now turn.

II.

 We first consider whether sales by VWPC to VWPA were sales "for exportation to the United States." 19 U.S.C. § 1401a(b)(1) ("The transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States," plus certain specified amounts.). In *Wood v. United States*, 62 C.C.P.A. 25, 505 F.2d 1400 (1974), the Court of Customs and Patent Appeals addressed the meaning of the term "sales" in the export value statute, *see* 19 U.S.C. § 1401a(b) (1964), in the context of a three-tier transaction involving a related manufacturer and importer. In *Wood*, the importer argued that the merchandise at issue should be valued based on sales prices between the manufacturer and the importer. Customs, however, maintained that the transactions between the manufacturer and the importer were not "sales." The Court of Customs and Patent Appeals agreed with the importer. In so doing, it held that, for purposes of the statute, the term "sales" should be construed in accordance with its ordinary meaning, which it concluded was "transfers of property from one party to another for a consideration." *See id.* at 1406. Although *Wood* was decided under the export value statute, there is nothing

in the current statute which suggests that the word "sold" was meant to have other than its ordinary meaning. Accordingly, we conclude that, in order for merchandise to be "sold" for purposes of 19 U.S.C. § 1401a(b)(1), there must be a transfer of title from one party to another for consideration.[3]

The evidence indicates that sales of merchandise from VWPC to VWPA did in fact occur. VWPC issued invoices to VWPA and VWPA made payment to VWPC against those invoices. Moreover, the transactions were recorded in the books of the companies as sales. Under the terms of sale, VWPC transferred title to, and possession of, the fabrics to VWPA at the factory in St. Victor, Quebec. In consideration of the transfer of ownership, VWPA promised to pay the selling price. Every requirement for a sale, as defined in *Wood,* was present in the transactions between VWPC and VWPA. Consequently, those transactions constituted sales for purposes of 19 U.S.C. § 1401a(b)(1).

Finally, under § 1401a(b)(1), not only must a transaction constitute a sale, but the transaction must be a sale of merchandise "for exportation to the United States." In *E.C. McAfee Co. v. United States,* 842 F.2d 314, 319 (Fed.Cir.1988), we stated that "[a] determination that goods are being sold or assembled for exportation to the United States is fact-specific and can only be made on a case-by-case basis." In this case, however, it is undisputed that VWPC's sales of melton fabric to VWPA were sales of merchandise for exportation to the United States. Accordingly, we hold that the transactions between VWPC and VWPA constituted sales for exportation to the United States within the meaning of § 1401a(b)(1).

### III.

There is one final matter that we must address before leaving § 1401a(b)(1). As just discussed, that section provides that "[t]he transaction value of imported merchandise is the price actually paid or payable for the merchandise when sold for exportation to the United States," plus certain specified amounts.

The term "the price actually paid or payable" that appears in § 1401a(b)(1) means

> the total payment (whether direct or indirect, and exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of the merchandise from the country of exportation to the place of importation in the United States) made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller.

19 U.S.C. § 1401a(b)(4)(A). The amounts that must be added to "the price paid or payable" are set forth in 19 U.S.C. § 1401a(b)(1)(A)-(E). Those amounts are: (A) packing costs incurred by the buyer with respect to the imported merchandise; (B) any selling commissions incurred by the buyer with respect to the imported merchandise; (C) the apportioned value of any "assist"; (D) any royalty or license fee related to the imported merchandise that the buyer is required to pay as a condition of sale of the imported merchandise for exportation to the United States; and (E) the proceeds of any subsequent resale, disposal, or use of the imported merchandise that accrue directly or indirectly to the seller. The statute provides that

> [t]he price actually paid or payable for imported merchandise shall be increased

---

3. Indeed, Customs has applied this definition in published rulings under the current statute. It has stated:

> For Customs purposes, a "sale" generally is defined as a transfer of ownership in property from one party to another for a consideration. *Wood v. United States,* 62

C.C.P.A. 25, 33, 505 F.2d 1400; C.A.D. 1139 (1974). Although *Wood* was decided under the prior appraisement statute, Customs recognizes this definition under the TAA [the Trade Agreements Act of 1979]. *See* HQ 546225 (Apr. 14, 1997).

by the amounts attributable to the items (and no others) described in subparagraphs (A) through (E) only to the extent that each such amount (i) is not otherwise included within the price actually paid or payable; and (ii) is based on sufficient information. If sufficient information is not available, for any reason, with respect to any amount referred to in the preceding sentence, the transaction value of the imported merchandise shall be treated, for purposes of this section, as one that cannot be determined.

19 U.S.C. § 1401a(b)(1).[4]

Before the Court of International Trade, the government argued that there were various costs and expenses that were paid to VWPA by VWPC for the benefit of VWPC to effectuate the sales of the melton fabric that were not part of "the price actually paid or payable" for the fabric, but that should have been. In making this argument, the government referred in passing to 19 U.S.C. § 1401a(b)(1)(A)-(E). It mainly argued, however, that in accordance with 19 U.S.C. § 1401a(b)(4)(A), these costs and expenses had to be added to the sales price of the melton fabric to arrive at a correct "price actually paid or payable" for the fabric because, in the words of § 1401a(b)(4)(A), they were payments "made ... for imported merchandise by the buyer to, or for the benefit of, the seller." The government specified the following costs and expenses: managerial fees, accounting expenses, accounts receivable insurance, stationery, expenses paid to VWPC by VWPA for charge backs, and commissions to Concept III. The government claimed that these costs and expenses had to be added and allocated to each entry of melton fabric at issue. It then asserted that this could not be done because the unrebutted testimony of its auditor established that there were numerous expense items that could not be veri-

fied based upon the documents that VWPA had submitted to Customs. The government further claimed that it was not possible to allocate all of the payments that were made by VWPA to or for the benefit of VWPC because the payments had not been allocated by sale but, rather, over the entire pertinent fiscal period. Accordingly, the government argued that because there was "insufficient information" upon which to determine the proper transaction value for sales by VWPC to VWPA those sales could not serve as the basis for transaction value.

On appeal, the government reasserts the foregoing argument and advances it as an additional reason why we should affirm the decision of the Court of International Trade rejecting sales by VWPC to VWPA as the basis for transaction value for purposes of 19 U.S.C. § 1401a(a)(1). VWPA responds that the government's argument is without merit, stating that the various costs and expenses identified by the government "had nothing to do with the import transactions, but were simply general overhead expenses arising from services provided by VWPC and properly charged to VWPA."

The government's argument presents a difficulty for the court. The difficulty arises from the fact that the Court of International Trade failed to address, or to make findings of fact with respect to, the government's claim that the VWPC–VWPA sales price could not serve as the basis for transaction value because it did not include certain required costs and expenses. This no doubt was due to the fact that the court determined that VWPC's sales to VWPA were not viable because VWPC and VWPA were "one and the same" for purposes of 19 U.S.C. § 1401a(a)(1)(A). Be that as it may, we are not in a position to decide this issue in the first instance. Most importantly, all that we have before us are the contentions

4. The terms "packing costs," "assist," and "sufficient information" are defined in 19 U.S.C. § 1401a(h).

of the parties with respect to the alleged costs and expenses which form the basis for the government's argument. Without findings as to the nature of those costs and expenses, we are not in a position to determine whether and to what extent any of them (i) should be part of "the price actually paid or payable" for the melton fabric under 19 U.S.C. § 1401a(b)(4)(A), or (ii) should be added to "the price actually paid or payable" for the fabric under 19 U.S.C. § 1401a(b)(1). This is a matter for the Court of International Trade to address on remand.

## IV.

■ As discussed above, in order for a transaction value between related parties to serve as the basis for appraising imported merchandise, the transaction value must be established as acceptable through use of one of the methods set forth in 19 U.S.C. § 1401a(b)(2)(B). VWPA argues that the transaction value of sales by VWPC to it closely approximates the transaction value of identical or similar merchandise, as required under § 1401a(b)(2)(B)(i). Alternatively, it argues that the same transaction value closely approximates the deductive value or computed value for identical or similar merchandise, as required under § 1401a(b)(2)(B)(ii).[5] We consider these arguments in turn.

As noted above, a related-party transaction value will be acceptable if "the transaction value of the imported merchandise closely approximates ... the transaction value of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States." 19 U.S.C. § 1401a(b)(2)(B)(i). The statute provides that for the purposes of § 1401a(b)(2)(B)(i) the term "similar merchandise" means merchandise that (i) "was produced in the

same country as, but not produced by the same person as, the merchandise being appraised," (ii) "is like the merchandise being appraised in characteristics and component material," and (iii) "is commercially interchangeable with the merchandise being appraised." *See* 19 U.S.C. § 1401a(h)(4)(B).

In the Court of International Trade, VWPA sought to establish the acceptability of the VWPC–VWPA transaction value under § 1401a(b)(2)(B)(i) by offering evidence relating to the Cookshiretex–Levy transactions. The evidence consisted of the official Customs records for several import transactions between Cookshiretex and Levy.

The Court of International Trade concluded that the Cookshiretex–Levy sales could not be used to provide a comparable transaction value for purposes of § 1401a(b)(2)(B)(i) because VWPA "failed to provide a sufficient showing that expenses such as packing costs, sales commissions, assists, royalties and rebates were properly taken into account." *See VWP*, 980 F.Supp. at 1287. On appeal, VWP challenges this ruling. The government urges us to affirm the trial court's decision. It advances several reasons why the prices between Cookshiretex and Levy cannot be used as a test transaction value. Specifically, the government argues that VWPA failed to prove (i) that Cookshiretex and Levy are unrelated parties or (ii) that Customs used transaction value as the standard to arrive at the valuation of Levy's importations into the United States. The government also argues that the Levy–Cookshiretex sales cannot serve as a basis of comparison because the merchandise that was the subject of those sales was not comparable to the melton fabrics at issue here.

**5.** The statute also provides that a related-party transaction value will be acceptable if "an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable." 19 U.S.C. § 1401a(b)(2)(B). In the Court of International Trade, VWPA did not rely on this method of establishing acceptability, preferring instead to use the tests of the alternative method of establishing acceptability set out in § 1401a(b)(2)(B)(i) and (ii).

In a civil action commenced in the Court of International Trade to challenge a Customs appraisal, the appraisal decision "is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision." 28 U.S.C. § 2639(a)(1); *See also Getz*, 55 C.C.P.A. at 23 ("It is fundamental that the value returned by the appraiser is presumed to be correct and that anyone challenging the appraiser's values must prove, by competent evidence, facts showing [that the values are incorrect]."). The presumption of correctness attaches to every factual determination necessary to support an appraisal, and Customs is presumed to have found every necessary fact. *See United States v. New York Merchandise Co., Inc.*, 58 C.C.P.A. 53, 435 F.2d 1315, 1318 (1970). VWPA was entitled to rely on the presumption of correctness which attached to the transaction value that was reflected in the Customs documents of the Cookshiretex–Levy transactions. In other words, we presume that all required statutory elements of value, including those cited by the Court of International Trade, were included in the transaction values determined by Customs for the Cookshiretex–Levy sales. Because, in the Court of International Trade, the government was the party challenging the correctness of the Cookshiretex–Levy transaction values, it was the government that bore the burden of demonstrating that those transaction values were incorrect or unreliable. However, it failed to produce any evidence to overcome the presumption of correctness. Furthermore, the evidence indicates that transaction value was the appraisal method utilized by Customs when liquidating the Cookshiretex fabrics. The entered values on the entry summaries for the fabrics exactly match the selling prices on the corresponding invoices. The government does not dispute that those values also were the appraised values. We conclude that VWPA has established that the appraised values of the Cookshiretex fabrics were transaction values.

We do not, however, express any opinion as to whether Cookshiretex and Levy were unrelated parties, whether the merchandise that was the subject of their transactions was similar to the merchandise at issue here, or whether the VWPC–VWPA transaction value "closely approximates" the Cookshiretex–Levy transaction value. The Court of International Trade made no findings on these points. We leave these factual issues for determination by the court on remand.

In the alternative, VWPA sought to establish the acceptability of the VWPC–VWPA transaction value under 19 U.S.C. § 1401a(b)(2)(B)(ii) by demonstrating in the Court of International Trade that the transaction value closely approximated "deductive value or computed value for identical merchandise or similar merchandise." The court rejected the deductive and computed values submitted by VWPA because it concluded that they were unreliable. The court stated that "the record is replete with suspect figures and inconsistent allocations of costs." *VWP*, 980 F.Supp. at 1288. However, the court did not identify what figures it considered suspect; nor did it identify what allocations of costs it found inconsistent. Without specific factual findings regarding VWPA's deductive and computed value calculations, we are unable to review the court's conclusion that they are unreliable. If computed value and deductive value become relevant on remand, the Court of International Trade should conduct a *de novo* review of the evidence, make pertinent findings of fact, and state in its opinion the basis for its decision.

## CONCLUSION

The Court of International Trade erred as a matter of law in concluding that sales of melton fabrics by VWPC to VWPA could not form the basis for transaction value for the purpose of appraising the melton fabrics upon importation into the United States pursuant to 19 U.S.C. § 1401a(a)(1). We hold that the VWPC–

VWPA transactions are viable for that purpose. We also hold that transactions between VWPC and VWPA constituted sales of merchandise for exportation to the United States for purposes of 19 U.S.C. § 1401a(b)(1). (2) Because the Court of International Trade did not address the government's claim that various costs and expenses had to be included in transaction value, either pursuant to 19 U.S.C. § 1401a(b)(1) or 19 U.S.C. § 1401a(b)(4)(A), we are not able to rule on the government's contention that a transaction value based upon sales by VWPC to VWPA cannot be determined. This issue is remanded for further proceedings. (3) The Court of International Trade erred as a matter of law in concluding that the Cookshiretex–Levy transactions could not be used to establish the acceptability of the VWPC–VWPA transaction value under 19 U.S.C. § 1401a(b)(2)(B)(i) on the ground that VWPA failed to establish that the appraised values of the merchandise in the Cookshiretex–Levy sales represented transaction values. We hold that VWPA did establish that the prices in the Cookshiretex–Levy sales represented transaction values. This issue is remanded to the Court of International Trade so that the court may apply the test set out in 19 U.S.C. § 1401a(b)(2)(B)(i). In doing so, the court should determine whether Cookshiretex and Levy are unrelated parties, whether the Cookshiretex–Levy merchandise was identical or similar to the VWPC–VWPA merchandise, and whether the VWPC–VWPA transaction value closely approximated the Cookshiretex–Levy transaction value. (4) In determining that VWPA's deductive and computed value calculations were unacceptable for purposes of the analysis required under 19 U.S.C. § 1401a(b)(2)(B)(ii), the Court of International Trade failed to make requisite findings of fact. This matter is remanded for further proceedings. If on remand the issues of deductive and computed value become relevant, the court should conduct a *de novo* review of the evidence, make pertinent findings of fact, and state in its opinion the basis for its decision.

## COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*