**US JVC CORP., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–1592.

United States Court of Appeals, Federal Circuit.

July 21, 1999.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 6, 1999.

John J. Mahon, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, and David M. Cohen, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

PLAGER, Circuit Judge.

US JVC Corporation ("JVC") appeals the United States Court of International Trade's dismissal of JVC's case for lack of jurisdiction. *See U.S. JVC Corp. v. United States*, 15 F.Supp.2d 906 (C.I.T. 1998). The Court of International Trade found that JVC failed to protest within the statutorily mandated ninety days a premature liquidation of certain color television receivers subject to an antidumping duty order. *See* 19 U.S.C. § 1514(c)(3) (1994). Although the Government admits that JVC's receivers were unlawfully liquidated, under existing precedent we must affirm the trial court's dismissal of JVC's case as untimely.

## BACKGROUND

This appeal stems from the following undisputed facts. JVC imported seventeen entries of color television receivers between April and November of 1990. The receivers, which were manufactured in Taiwan, were subject to an antidumping duty order. Consequently, JVC deposited estimated antidumping duties with the U.S. Customs Service ("Customs") when the receivers entered the United States.

Jack D. Mlawski, Galvin & Mlawski, of New York, New York, argued for the plaintiff-appellant. With him on the brief was John J. Galvin.

*See* 19 U.S.C. § 1673e (1994). After JVC deposited the estimated duties, Customs suspended the liquidation (actual assessment of duties) of the receiver entries until the Department of Commerce ("Commerce") published the results of its final determination in the administrative review covering color television receivers from Taiwan for the period of April 1990 through March 1991. Customs notified JVC of the suspension of the assessment of duties pursuant to 19 U.S.C. § 1504(c) (1994) and 19 C.F.R. § 159.12(c) (1991).

On January 9, 1992, Commerce directed Customs to continue to suspend final assessment of duties on the television receivers until "specifically instructed otherwise." Nevertheless, on February 28, 1992, Customs proceeded to assess JVC's receivers at the duty rate deposited by JVC. Concurrently, Customs posted bulletin notices of the final assessments.

Commerce published the final results of its administrative review of color television receivers on May 12, 1992. It determined that for the period of review no antidumping duties should be assessed on the particular receivers imported by JVC. Subsequently, on September 27, 1995, over three years after Customs' premature assessment of duties on JVC's color television receiver entries, Commerce instructed Customs to assess JVC's color television receivers with a dumping margin of zero percent.[1] Thereafter, JVC requested a refund of the antidumping duty deposits it paid for the receivers. Customs denied the request. In response, on December 26, 1995, JVC filed a protest challenging Customs's 1992 assessment of the receivers. Customs denied the protest as untimely. JVC then filed a claim in the Court of International Trade.

In its analysis of the case, the Court of International Trade noted that JVC had conceded that it failed to comply with the statutory requirements of 19 U.S.C. § 1514(c)(3) (1994) (requiring filing of a

protest within ninety days after notice of liquidation). The court then concluded that the ninety-day period for filing protests following the final assessment of antidumping duties is not subject to equitable tolling. *See U.S. JVC Corp.*, 15 F.Supp.2d at 910–11. Consequently, the court dismissed JVC's suit for lack of subject matter jurisdiction. *See id.* at 915. As further justification for dismissing JVC's claim, the Court of International Trade cited the case of *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed.Cir. 1995). *See U.S. JVC Corp.*, 15 F.Supp.2d at 912–13 & n. 10.

JVC appeals the Court of International Trade's dismissal of its protest of the Government's improper assessment of duties on JVC's color television receivers. We have jurisdiction to hear this appeal under 28 U.S.C. § 1295 (1994).

## DISCUSSION

 This court has plenary review over the legal conclusions of the Court of International Trade, including the court's interpretation of the protest statute, 19 U.S.C. § 1514. *See International Home Textile, Inc. v. United States*, 153 F.3d 1378, 1380 (Fed.Cir.1998). We review the court's factual findings for clear error. *See id.*

### A.

 On appeal JVC argues that because Customs assessed duties on JVC's receiver entries during the suspension period, the duty assessment was null and void. The Government conceded at oral argument and in its brief that the liquidation was a premature assessment. Given this admission, under JVC's theory, the court should treat the assessments as never having occurred. A remedy for such an assessment could be to require Customs to perform the liquidation now at the 0% duty rate,

---

1. A challenge to the validity of the final results by several review participants caused the three year delay between publication of the final results of the administrative review and the instruction to assess duties.

thereby entitling JVC to a refund of its estimated antidumping duties. Alternatively, JVC suggests that this court has the equitable power to reset the statutory period for filing a protest, which would enable JVC to file its protest in a timely fashion. Either remedy could be fitting under the circumstances; however, under the doctrine of *stare decisis*, we must first ensure that such remedies are consistent with our case precedent. A review of this court's case law indicates that neither remedy is available to JVC.

## B.

Although the Government's admittedly premature action brought about an unjust result, we conclude we are unable to remedy JVC's situation due to this court's earlier decision in *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed.Cir.1995). The pertinent facts of *Juice Farms* are: Juice Farms imported orange juice subject to an antidumping duty order, and consequently, Juice Farms deposited estimated antidumping duties with Customs. Customs then issued a notice of suspension of assessment of duties on Juice Farms' orange juice entries. During the period of suspension, Customs erroneously assessed duties on some of Juice Farms' orange juice entries. Because of Commerce's suspension order, Juice Farms failed to monitor the bulletin notices posted by Customs at the time of actual assessment and learned of the assessment after the ninety-day protest period had passed. Subsequently, Customs denied Juice Farms' request for a refund of its antidumping duty deposits as untimely. The Court of International Trade also dismissed Juice Farms' suit as untimely. This court affirmed the decision by the Court of International Trade, concluding that Juice Farms was not entitled to equitable tolling of the pro-

test deadline. *See id.* at 1346. Because the facts in *Juice Farms* so closely parallel those of this case, we have no choice but to reach the same conclusion as that of the *Juice Farms* court.

Although the result in *Juice Farms* seems harsh, it is not without reason. First, this court has previously held that the posted bulletin notices of actual assessment of duties provide sufficient notice to trigger the ninety-day period for protests. *See Goldhofer Fahrzeugwerk GmbH & Co. v. United States*, 885 F.2d 858, 860 (Fed.Cir.1989). Second, the importer bears the burden of checking for posted notices of actual assessment of duties and of timely protesting. *See Omni U.S.A., Inc. v. United States* 663 F.Supp. 1130, 1133 (C.I.T. 1987), *aff'd*, 840 F.2d 912 (Fed.Cir.1988); *see also* 21A Am.Jur.2d *Customs Duties and Import Regulations* § 204 (1998) (citing *Tropicana Prods., Inc. v. United States*, 713 F.Supp. 415 (1989), *aff'd*, 909 F.2d 504 (Fed.Cir.1990)). As this court pointed out in *Juice Farms*, when the importer bears the burden of examining the bulletin notices and protesting within the statutory time limits, then the importer is not entitled to equitable tolling if its own lack of diligence caused the untimely filing. *See* 68 F.3d at 1346; *Omni U.S.A., Inc. v. United States*, 840 F.2d 912, 914–15 (Fed.Cir.1988).

Therefore, as we read *Juice Farms*, the case prevents us from giving JVC any remedy.[2] We are bound by the decision in *Juice Farms*, and thus, must uphold the Government's position in this appeal.

## CONCLUSION

For the above reasons, we affirm the Court of International Trade's dismissal of JVC's suit.

---

2. The Court of International Trade noted in its opinion that in similar situations of premature assessment of duties, including *Juice Farms*, Congress has enacted specific statutory remedies. *See U.S. JVC Corp.*, 15 F.Supp.2d at 914–15 (citing examples in which Customs was directed to reassess entries subject to a suspension order that were

prematurely assessed even though the importer failed to file a timely protest, *see, e.g.*, S.Rep. No. 104–393, at 8, 27–28, 30 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4036, 4043, 4062–63, 4065, and one instance in which the time for filing a protest was tolled, *see* H.R.Rep. No. 102–634, at 91 (1992)).

COSTS

Parties shall bear their own costs.

*AFFIRMED.*