Slip Op. 03 - 30

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| | : | |
| VWP OF AMERICA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| THE UNITED STATES, | : | Court No. 93-12-00803 |
| | : | |
| Defendant. | : | |
| | : | |

[On consideration of remand results from U.S. Customs Service valuing imported fabrics from Canada, judgment for the government.]

Decided: March 20, 2003

*Barnes, Richardson & Colburn* (*James S. O'Kelly* and *Alan Goggins*), New York City, for the plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General*, John J. Mahon*, Attorney-in-Charge, International Trade Field Office*,* Commercial Litigation Branch, Civil Division, United States Department of Justice (*Saul Davis*), for the defendant.

## OPINION

This opinion concerns the proper valuation of certain melton and other fabrics imported from Canada and presumes familiarity with the Court's prior decision, 25 CIT ___, 163 F. Supp. 2d 645 (2001). Previously, in accordance with the decision of the Court of Appeals for the Federal Circuit in *VWP of America, Inc. v. United States*, 175 F.3d 1327 (Fed. Cir. 1999), this Court found that a certain navy/purple melton fabric imported by the plaintiff ("VWPA") from its Canadian parent Victor Woollen Products, Ltd. ("VWPC") was "similar" to a certain navy Cookshiretex melton

fabric[1] and that a certain VWPC plaid fabric was "similar" to a Cookshiretex plaid fabric[2] for purposes of related-party transaction valuation under 19 U.S.C. § 1401a(b)(2)(B). *See* 19 U.S.C. § 1401a(h)(4)(B). The matter was remanded to the U.S. Customs Service ("Customs") for determination of whether each claimed value, adjusted for selling commission and any dutiable charge backs, "closely approximates" its respective test value. Customs was directed to consider valuing the remaining contested fabric on the basis of transaction value in light of such results or search its database for any additional liquidated entries that might serve as test values for transaction valuation. The remand results have been filed and the parties have commented thereon.

The plaintiff's proffered deductive and computed value statements did not prove the acceptability of transaction valuation,[3] but they were deemed possible valuation bases in their own right. On the other hand, the Court acceded to the government's desire to examine the sources of the figures underlying the statements proffered. The Court concluded that "[i]f the plaintiff produces sufficient information within a reasonable time, Customs shall[ ] . . . value the remaining fabrics on the basis of deductive or, at plaintiff's option, computed value. Otherwise, Customs shall value the entries in accordance with 19 U.S.C. § 1401a(f)." 163 F. Supp. 2d at 669.

---

[1]  *Cf.* Plaintiff's Exhibit ("Pl.'s Ex.") 9 at 13 (code "0912", a 23/25 oz. melton, 75% wool, 20% nylon, 5% other, 152.75 yards @ US$4.70/yard) *with* Defendant's Exhibit ("Def.'s Ex.") E-7 (a 22 oz. melton of 80% wool, 15% nylon, 5% other, 2,000 yards @ US$4.27/yard).

[2]  *Cf.* Pl.'s Ex. 9 at 25 (code "C9217", an 18/20 oz. plaid of 60% wool, 25% polyester, 10% acrylic, 57.25 yards, US$3.60 per yard) *with* Def.'s Ex. E-2 (a 17 oz. plaid of 65% wool, 30% acrylic, 5% nylon, 9.84 yards @ US$2.95/yard).

[3]  *See* 19 U.S.C. §§ 1401a(b)(2)(B)(ii), 1401a(d) & 1401(e).

### *Results of Remand*

The remand results state that the Cookshiretex entries cannot be used for comparisons with the remaining VWPA entries because the prices of the VWPC fabrics at issue varied depending upon style and color, such qualities cannot be considered commercially interchangeable, and differences in color are not "adjustments to test values" permitted by 19 U.S.C. § 1401a(b)(2)(C). *Customs Remand Report* at 2-3.[4] Consequently Customs concluded it was not possible to make "across the board" comparisons from the Cookshiretex exhibits and that test value comparison of the remaining VWPC fabrics with "similar" fabrics was necessary. *Id*. at 2.

In accordance with the order of remand, Customs identified one additional entry as a potential test value candidate out of 19 entries of Canadian fabric classified under HTSUS 511.30.9000. The entry involved a black melton 24 oz, 80% wool, 15% nylon and 5% other fibers (514.59 yards, US$4.75/yard, total price of US$2,444.30) imported from Canada and transacted between Cookshiretex and Delong Sportswear, Inc. Customs concluded that the fabric was "similar" to VWPC 24/25 black melton fabrics, however it also concluded that the entered Cookshiretex fabric was 40 inches in length, whereas the similar VWPC merchandise was 58 inches in length. *Update to Customs Remand Report* at 1-2.

On the issue of what charge-back costs borne by VWPC on behalf of VWPA are dutiable, 19 C.F.R. § 15.103(g) requires proceeds to be "directly related" to importation to be dutiable. The remand results noted Customs' general rule that payments made by the buyer to the seller in

---

[4] Customs also notes that despite Mr. Duval's testimony that a difference of up to 5 percent of wool content was considered commercially interchangeable, the statute does not permit adjustments to be made for differences in wool content.

connection with the sale or marketing of a product in the U.S. after importation are not considered part of the price actually paid or payable. *Customs Remand Report* at 8, referencing Headquarters Ruling Letter ("HRL") 545998 (Nov. 13, 1996). *See* 163 F. Supp. 2d at 653, 656 n.22. Since Customs presumes that all payments from the buyer to the seller are part of the price actually paid or payable for the imported merchandise, Customs burdens the claimant with establishing both what the payments were for and that they did not in any way relate to the sale resulting in importation. *Customs Remand Report* at 9. After reviewing the trial transcript and documentary evidence submitted by plaintiff during trial, Customs concluded that the "special circumstances" of this case must be taken into account, including the "close relationship" between VWPC and VWPA, the fact that VWPA obtained all of its merchandise from VWPC, and the fact that all of the managerial, accounting and other services were provided to VWPA by VWPC's officers and employees in Canada, "in many instances by the same individuals who provided such services to VWPC." *Id*. at 10. Customs concluded that under these circumstances the "conclusory statements" and summary documentation submitted were insufficient to establish that the payments at issue were "completely unrelated" to the imported merchandise and considered them part of the price actually paid or payable. *Id*.[5]

---

[5] Customs distinguished the present situation from that of HRL 545998 on the ground that in HRL 545998 the co-promotion fees therein were considered not part of the price actually paid or payable because the matter showed a detailed written contract which clearly specified that the payments related to specific marketing services to be provided by the seller in the U.S. based on a complex formula that related those specific undertakings. Customs determined that the situation here differs, because it was provided with "no VWPC/VWPA contract regarding either the services VWPC was to provide to VWPA or how the fees for these services would be determined; nor were the fees paid for specific services provided in the U.S. . . . [N]one of the safeguards that were applicable in HRL 545998 apply in this case[, n]or were any source documents provided to enable Customs to evaluate the testimony or the summary documents in the record." *Remand Results* at 10.

The parties agreed that the charge-backs and commissions would be allocable based on sales rather than yardage sold. Adjusting the VWPC-VWPA prices of the "similar" C9217/1 plaid in Pl.'s Ex. 9 (page 13) and the 0912 melton in Pl.'s Ex. 9 (page 25) according to the methodology considered at trial, Customs determined that the adjusted VWPC-VWPA prices were US$4.51/yard and US$5.09/yard, respectively. Customs then determined that there was insufficient information on pricing differences in quantity and commercial level which would otherwise require adjustment in accordance with 19 U.S.C. § 1401a(b)(2)(C)(i).[6] Customs next determined that the adjusted US$4.51 price of the C9217/1 VWPC plaid did not "closely approximate" the entered US$2.95/yard price of the Cookshiretex plaid (Def.'s Ex. E-2), although it noted that the VWPC-VWPA price would "closely approximate" the commercial invoice US$4.70/yard price of the Cookshiretex plaid. Customs lastly determined that the adjusted US$5.09/yard price of the 0912 VWPC melton does not "closely approximate" the entered price of US$3.90/yard (or US$4.27/meter) of the Cookshiretex melton described in Def.'s Ex. E-7.

---

[6] Customs additionally states that as a result of remand it has "new concerns . . . with regard to the two Cookshiretex fabric comparisons" considered in the prior opinion. *Customs Remand Report* at 3. Def.'s Ex. E-2 consists only of an entry summary, showing a declared value of US$29 for a plaid fabric. Based on the declared description (9.84 yards plaid – 17 oz 65% wool, 30% acrylic 5% nylon), Mr. Duval testified that it must have been entered at US$2.75 per yard. In addition to its search for additional liquidated entries that might be used for test purposes, Customs states that on remand it obtained the complete entry package for Def.'s Ex. E-2, which package includes the commercial invoice from Cookshiretex. The invoice specifies a price per yard of US$4.70 and a total price of US$47.23. Customs states that this suggests that Customs did not review this entry, and it now argues that it would be improper to make comparisons based on it. *Id*. at 3-4. Second, Customs states that it "has new information which suggests that the prices Cookshiretex charges to Lou Levy and Sons may be the result of volume discounts." Although it does not further elaborate on that assertion, Customs contends that it lacks sufficient information at this time to make any adjustments on this basis. *Id*. at 4.

Customs followed the same methodology with respect to the additional Cookshiretex test value entry that had been located and determined "similar" to some of the VWPC fabric, entry E04-0930480-0. The price of the VWPC similar fabric varied depending upon the quantity purchased. Customs therefore selected "one of VWPA's larger purchases of 302 yards," Pl.'s Ex. 15, page 57. The date of export was December 8, 1992, two days prior to the test value date of export, which Customs found to satisfy the "at or about the same time" requirement of 19 U.S.C. § 1401a(b)(2)(B). Customs next determined an adjusted (in accordance with the foregoing method) VWPA-VWPC transaction value of US$4.00. Customs then determined that this did not "closely approximate" the E04-0930480-0 test value of US$4.70/yard because the difference of 16% was "significant". *Update to Customs Remand Report* at 3. Customs also noted that according to its National Import Specialist (NIS) for woven fabrics, the unit price per yard of fabric would depend upon width, and that if the test value fabric was the same width as the VWP fabric – 58 inches instead of 40 inches, a difference of approximately 50% – the test value would be approximately 50% higher and, therefore, the difference would be even greater (40%). Customs further states that it is "worth noting" that the test value's US$6.88 price, assuming a 50% increase based on a 58/inch width, "is close to the [US]$6.55 price paid by VWPA's customer, the price at which the fabric was appraised." *Id*. In the final analysis, Customs found that none of the compared VWPA-VWPC transaction values closely approximated any of the test values.

The remand order directed Customs to appraise the fabrics that could not be appraised on the basis of transaction value on the basis of either deductive or computed value, at VWPA's option, or under the fallback provision, 19 U.S.C. § 1401a(f). By letter dated Oct. 23, 2001 Customs requested

the plaintiff to state its preference for either deductive or computed valuation in accordance with the order of remand, and Customs also requested the plaintiff to provide source documentation to support its claimed profit and general expenses. If deductive value was selected, Customs further requested the plaintiff to provide evidence that the profit and general expenses figures in the deductive value exhibit (Pl.'s Ex. 55) are consistent with those usually made or incurred in connection with sales of imported merchandise of the same class or kind. VWPA immediately responded that its preference was to use deductive value over computed value. In response to request for sources to support the general expenses and profits claimed, counsel explained that such deductions were based directly on the VWPA's audited financial statements, Pl.'s Ex. 58, which were certified as complying with generally accepted accounting principles by Coopers and Lybrand. Counsel pointed out that Customs' auditor at trial expressed no criticism of the deductive value schedules and admitted that they may be entirely accurate, that there was no testimony or other evidence indicating VWP of America's general expenses and profits were inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind, and that there were therefore "no grounds for ignoring the statutory preference for use of the importer's profits and general expenses in this case." Pl.'s Comments at 9 (quoting letter to Customs of Oct. 25, 2001). *See* 19 U.S.C. § 1401a(d)(3)(B)(i).

Customs regarded this as non-responsive. "Without this information, Customs cannot determine the deductive value of the merchandise at issue." *Customs Remand Report* at 10. Customs further concluded that the record lacked pertinent information to determine the unit price at which the merchandise concerned is sold in the greatest aggregate quantity after the date of

importation of the merchandise being appraised but before the close of the 90th day after the date of such importation. *See* 19 U.S.C. § 1401a(d)(2)(A)(ii). In the end, Customs relied on the appellate court's statement that "the government is correct that if sales between VWPC and VWPA cannot serve as the basis for Transaction Value, then Transaction Value must be based upon sales by VWPA to its U.S. customers. *See* 19 U.S.C. § 1401a(a)(1)(b)." 175 F.3d at 1334. Customs therefore concluded, based upon the hierarchy mandated by 19 U.S.C. § 1401a(a)(1), that the alternative methods of deductive and computed value appraisement are not applicable to this case. *Remand Results* at 14 n.9, 15. Since Customs found related-party transaction valuation unacceptable, it therefore found, again, that "the price paid by the U.S. purchasers[ ] is a proper value either under the transaction value method under 19 U.S.C. 1401a(b) or under the fallback method under 19 U.S.C. 1401a(f)." In the alternative, it stated that "the merchandise could be appraised under 19 U.S.C. 1401a(f) using the VWPA/VWPC prices adjusted to include the charge-backs and selling commissions." *Customs Remand Report* at 15.

### *Discussion*

*"Closely approximates."*

The plaintiff points out that the VWPC-VWPA related party prices for C9217/1 plaid, 0219 navy melton and 0912 purple melton fabrics are already higher than the transaction value for the Cookshiretex similar fabrics. It contends that the purpose of the "closely approximates" test for the acceptability of related party prices is to ensure that related-party importers do no evade duties by declaring prices that are too low, and therefore additions to the VWPC-VWPA prices are unnecessary since they would only increase the VWPA-VWPC prices. Pl.'s Comments on *Customs*

*Remand Report* at 3, referencing S.Rep. No. 96-249 at 121 (1979), *reprinted in* 1979 *USCCAN* 381, 507. The plaintiff also urges a comparison of the ranges of prices for Cookshiretex and VWPC fabrics from the record.[7] It argues that these comparisons can be made without any of the adjustments called for in 19 U.S.C. § 1401a(b)(2)(C)(i) and (ii) to account for any differences in the commercial level of trade (*i.e.*, VPWA as distributor, *see* Tr. at 19, and Lou Levy as end-user, *see* Tr. at 57-58), or for the higher volumes imported by VWPA (*see* Tr. at 172-73), since the adjustments would only make the comparisons more favorable to it. *Id*. at 4.

Customs takes issue with the argument for determining the acceptability of related-party transaction valuation by comparing the price range of the VWPC-VWPA transactions with the price range of the Cookshiretex transactions. It explains that 19 U.S.C. § 1401a(b)(2)(B) contemplates specific transaction valuation of specific imported merchandise based upon a specific test value. The Court agrees. Furthermore, the government argues, "closely approximates" means just that and not "higher than." It argues that a transfer price that is too high would not be any more acceptable than one that is too low. Customs further argues that overvaluation raises serious concerns because of potential problems such as money laundering, tax evasion, and other schemes. *Update to Customs Remand Report* at 5, referencing *United States v. Ismail*, 97 F.3 50 (4th Cir. 1996) (upholding defendant's convictions for violating 18 U.S.C. § 542 by overstating on U.S. Customs documents

---

[7] The VWPA-VWPC prices during the fiscal quarter in Pl.'s Ex.s 6-40 before any additions to prices ranged from a low of US$3.00 to a high of US$4.80, with one fabric at US$6.15 per yard and the Cookshiretex entries ranged in appraised values from a low of US$2.95 per yard (Def.'s Ex. E-2) to a high of US$4.70 per yard (Def.'s Ex. E-1), with one fabric possibly outside that range at US$5.14 per unit (exhibit is Def.'s Ex. E-6 unclear as to whether the merchandise was entered in meters or yards, but the per-yard price would be US$4.74, or within the range of the other Cookshiretex entries). Pl.'s Comments at 3-4.

the value of imported merchandise. Customs therefore takes issue with the characterization of the charge-backs and commissions as "artificial" additions, since they are mandatory to arrive at a transaction value that can then be compared to a test value.

Responding, the plaintiff emphasizes that from the beginning of this matter Customs has consistently resisted transaction valuation of the VWPC-VWPA transfer prices on the ground they were allegedly too *low*. Now, it argues, Customs is erecting a "straw man" argument of concern for *over*valuation on the ground that the law requires "accurate" valuation. The plaintiff replies that the problems of money laundering, tax evasion and other schemes, while legitimate concerns, are in no way present in this case. Furthermore, it points out, Customs' "concern" is disingenuous because it is seeking valuation on an even *higher* basis.[8]

The Statement of Administrative Action ("SAA") adopted by Congress with the passage of the Trade Agreements Act of 1979, Pub. L. 96-39, 93 Stat. 144 (1979), indicates that the same considerations apply whether the transaction value is higher or lower than the test value, *viz*.:

> A number of factors will be taken into consideration in determining whether the transaction value "closely approximates" a test value. These factors include the nature of the imported merchandise, the nature of the industry itself, the season in which the goods are imported, and whether the difference in value is attributable to integral transport costs in the country of exportation. Since these factors may vary from case to case, it will be impossible to apply a uniform standard, such as a fixed percentage, in each case. For example, a small difference in value in a case involving one type of goods could be unacceptable while a larger difference in a case involving another type of goods might be acceptable in determining whether the transaction value closely approximates any of the "test" values. In this regard, the Customs Service will be consistent in determining whether one value "closely approximates" another value. Therefore, the same approach

---

[8] "If the imported fabrics are overvalued at the related party transfer prices, *a fortiori* they are overvalued at the appraised values adopted by Customs." Pl.'s Reply at 9.

> will be taken in those circumstances when Customs considers a transaction value that is higher than any of the enumerated tests as was taken when the transaction value was lower than any of the enumerated tests.

S.Rep. 96-249, 459-50, *reprinted in 1979 USCCAN* 371, 712. *See* H.Doc. 96-153 (Part II). The Senate Report also states that "the new related party criteria place a special responsibility on the Customs Service to carefully monitor such transactions, both for the purpose of protecting the revenue and for the accurate reporting of the actual value of import trade." *Id*. at 121. Customs' position on this matter, albeit belatedly expressed, is consistent with congressional intent.

*Additional Cookshiretex test entry.*

The plaintiff argues that Customs' assumption regarding the width of entry E04-0930480-0 is incorrect and that the suggested adjustment to price to account therefor is unnecessary. The plaintiff asserts that Cookshiretex sold melton fabrics only in 58/60 inch widths, an industry standard, and never produced or sold any 40-inch widths of melton. Pl.'s Sur-Reply at 2. For support, the plaintiff provides the affidavit of Bruno Beaudoin, the plant manager at Cookshiretex, to that effect. *Id*. at Ex. A. Additionally, the plaintiff argues that mathematical equivalence supports the foregoing.[9] The plaintiff also notes that the government's analysis of the VWPC-VWPA and the

---

[9] Specifically, the plaintiff argues that the actual quantity of the fabric must have been 478 linear yards, not the declared quantity of 478 square meters, and that the weight of the fabric was correctly declared as 350 kilograms. The invoice attached to the entry declares the quantity of fabric 514.59 yards weighing 771.89 pounds. Since the fabric was priced and sold by the yard, the plaintiff reasons, "it is safe to assume that the invoice accurately reflects the quantity sold." *Id*. at 3, n.1. Since one yard equals approximately 0.9144 meters, the 514.59 yards reported on the invoice translates into approximately 471.54 linear meter, "which is reasonably close to the 478 meters shown on the entry summary (514.59 x 0.9144)." *Id*. at 3.

Alternatively, the plaintiff points out that the invoice describes the fabric as weighing 24 oz./yard. One linear meter equals 1.0936 linear yards. The equivalent ounces per linear meter is 26.25 ounces (24 x 1.0936). There are 35.27 ounces per kilogram, so the equivalent kilograms/linear

(continued...)

Cookshiretex transactions fails to take into account differences in quantity and commercial levels of trade as required by 19 U.S.C. § 1401a(b)(2)(C), and it further argues that Customs' analysis fails to adjust the Cookshiretex price to account for the difference in the weight of the fabrics. It argues that Mr. Beaudoin's affidavit establishes that Delong Sportswear is an apparel manufacturer, a "different level of commerce," *id*. at 4, and it contends there is sufficient information in the record upon which to base a level of trade adjustment. It asserts that the difference between a distributor price and end-user/manufacturer price is normally the distributor's mark-up and that the audited financial statements of VWPA establish a distributor mark-up of 24.6% (the selling and administrative expenses of 12.5% and profit of 12.2%). It asserts that the record further establishes that the VWPC-VWPA business arrangement was typical and not unusual. *Id*. at 4, n.2, referencing Tr. at 492 (Testimony of Customs Auditor Mr. Gosslin). Applying this adjustment to the Cookshiretex price of US$4.75 results in a downward adjustment of US$1.17 per yard (4.75 x 0.246). The plaintiff also contends that the test value should also be adjusted downwards by US$0.10 to account for the difference in the weight of the fabrics, along the lines of the adjustment Mr. Duval made at trial in order to arrive at a proper comparison. The plaintiff further asserts that an adjustment for differences in quantity would be proper. If the record contains insufficient information to make such an adjustment, the plaintiff notes that Delong is a manufacturer and VWPA is a distributor, and therefore it would be reasonable to infer that VWPA imported

---

[9] (...continued)
meter is 0.7442 kilograms. Multiplying 0.7442 kilograms times 471 linear meters yields a gross weight of 350.51 kilograms, "almost exactly the 350 kg reported on the entry summary." *Id*. Therefore, based on Mr. Beaudoin's affidavit and its own calculations, the plaintiff argues that Customs' proposed upward adjustment of entry E04-0930480-0 to account for a supposed different in the width of the fabrics was unnecessary. *Id*.

substantially more fabric than Delong.  Nonetheless, the plaintiff asserts that even without an adjustment for quantity the VWPC-VWPA price of US$3.35 "closely approximates" the test value price, adjusted in accordance with its foregoing calculations, of US$3.48.

The government responds that: (1) if the plaintiff's affidavit is correct and the entered value and width are incorrect, none of the information in the entry can be considered a statutory transaction value that was "accepted" by Customs;[10] (2) the volume of this Cookshiretex transaction was 514 yards whereas the import volume of the allegedly similar VWPC fabric ranged from *one* yard to 302 yards, and it asserts that "there is absolutely no evidence of record [to indicate] that the sales price on a high volume sale would be the same on a low volume sale[,]" (3) regardless of any adjustment to account for differences in width, Customs determined that the test value and the chosen VWPC-VWPA transaction were not "closely approximate;" (4) 19 U.S.C. § 1401a(b)(2)(C) does not permit adjustments to account for differences in weight and there is no indication of what the actual weight of the comparable VWP fabric was in any event; (5) there is insufficient information upon which to base an adjustment to the additional Cookshiretex entry to account for the different commercial levels involved;[11] and (6) the plaintiff's proposal to make adjustments based upon VWPC's own markup to VWPA for purposes of comparison is problematic and unacceptable because (a) there is

_____

[10]   The government also maintains that the "the appraised value accepted by Customs, based upon the CF 7501 filed by Cookshiretex, was an appraised value for fabric that was 482 meters/40 inches wide.  It was not an appraised Transaction Value that was accepted by Customs for 58/60 fabric."  Def.'s Sur-Reply at 9.

[11]  Specifically, the government states that the "analysis producing for comparisons of entries by making adjustments for the different weights of the fabrics has no basis in the statute or in the record – there is no testimony that different weight fabrics are, in fact, similar merchandise, simply because the price per yard can be compared based upon the adjustment of the different weights of the fabrics."  *Id*. at 10.

no means of assuming what the Cookshiretex sale price would have been if an intermediary had been involved, (b) using that mark-up as the *bona fides* would be bootstrapping since that issue is precisely what this case is about, and (c) again, the adjustment would not result in a "closely approximates" comparison in any event, since the VWPA-VWPC transaction, once it is adjusted for selling commission and charge-back expenses, would still be approximately 15% higher. Def's Sur-Reply at 8-11.

The Court accepts the plaintiff's argument that entry E04-0930480-0 involved a 58-inch width, however the government's analysis of the other issues appears correct. Assuming *arguendo* that the dutiable charge-back expenses may be properly determined, the Court is persuaded that the evidence does not show that the additional Cookshiretex entry "closely approximates" the VWPA-VWPC transfer price to which the entry could be compared.

*"Charge-back" and commission expenses* .

Regarding the commissions paid to Concept III by VWPA, the plaintiff urges the Court to consider allocating the commission payments between VWPC and VWPA in accordance with the Court's finding that Concept III was the agent of both. The plaintiff argues that only that portion of Concept III's activities on behalf of the seller should be included in transaction value and that the fair and equitable thing to do in this instance is split the amount of the commissions evenly between the companies. Customs objects to this suggestion and argues that amounts equal to "any selling commission incurred by the buyer with respect to imported merchandise" are properly added to or included in the price paid or payable, *see* 19 U.S.C. § 1401a(b)(1) & (4). Since VWPA paid the full commission to Concept III and the Court was unable to distinguish the commissions paid to Concept

III as relating "solely" to VWPA's U.S. sales, Customs maintains that the full amount is dutiable. The government further argues that even if there is an *arguendo* basis for concluding that only portions of the commissions were dutiable, there is "insufficient information" in the record upon which to determine such apportionment. Consequently, it contends the plaintiff's claimed transaction values should be rejected pursuant to the last clause of 19 U.S.C. 1401a(b)(1) ("If sufficient information is not available, for any reason, with respect to any amount referred to in the preceding sentence, the transaction value of the imported merchandise concerned shall be treated, for purposes of this section, as one that cannot be determined.")

Regarding the "charge backs" remitted to VWPC by VWPA , the plaintiff argues that the evidence shows that they "were for services billed monthly and paid separately without regard to shipment of fabrics to the Unites States in a given month." *Id*. at 6, referencing Pl.'s Ex. 60, Tr. 173-174, 271-273. It therefore contends that the charge-back expenses are not "directly related" to the imported merchandise and should not be included in transaction value under 19 U.S.C. § 1401a(b)(1)(E). It argues that Customs' "completely unrelated" requirement regarding the charge-back expenses contradicts the "directly related" standard of 19 C.F.R. § 152.103(g) and should be disregarded. For support, the plaintiff references "twenty years worth" of Customs rulings finding the types of charges at issue to be non-dutiable, including HQ 542122 (Sep. 1, 1980) (payments for management, accounting, legal and other services), HQ 543512 (Apr. 9, 1985 (payments for management services, accounting, finance, planning and clerical activities); HQ 544353 (Oct. 24, 1989) (payments for general administrative services including but not limited to management, accounting and legal services); HRL 545420 (May 31, 1995) (payments for management service fees

for financing, accounting, administration and clerical services), HQ 546801 (Nov. 5, 1998) (payments for accounting and legal expenses).  Furthermore, it points out, the January 2001 edition of the *Customs Valuation Encyclopedia (1980-1999), An Informed Compliance Guide* continues to represent Customs' official public position on the dutiability of these types of expenses.  In it, HQ 543512 appears in the section entitled "payments unrelated to the imported merchandise."  This is in direct contrast, the plaintiff emphasizes, to the position the government has taken in this matter and its argument over the proper interpretation of *Generra Sportswear Co. v. United States*, 905 F.3d 377 (Fed. Cir. 1990).  The plaintiff also calls particular attention to HRL 545420 which found, on the authority of *Generra*, that quota payments had to be added to the transaction value of the imported merchandise but *not* the management services considered therein.  Pl.'s Comments at 7.

The government responds that Customs has no "long standing" rule regarding the dutiability of the charge back expenses at issue and that they are handled on a case by case basis.  It states that in light of *Generra*, *supra*, Customs presumes such payments to be dutiable and shifts the burden to importers to disprove.  It further states that Customs gives little weight to HRL 543512 because the ruling pre-dated *Generra*, and unlike the instant matter the fees considered therein reflected time spent by management personnel *in* the United States. *Update to Customs Remand Report* at 7.

The plaintiff responds that HQ 543512 is still valid and that the government's assertions regarding its applicability post-*Generra* are disingenuous.  The plaintiff points out that HRL 545420 (May 31, 1995) was issued some *five years* after *Generra*.  HRL 545420 considered certain management fees and relied on *inter alia* HQ 543512 to find that fees paid for arranging financing, accounting services, administration and clerical activities *were not* to be included in the transaction

value.  Finally, the plaintiff notes that Customs has avoided answering whether the charge-back expenses were "directly related" to the importations, as required by 19 C.F.R. § 152.103(g) and the Court's remand order.  The plaintiff further argues that Customs' "completely unrelated" test, in addition to being contrary to Customs' own regulation, is impossible to prove, since a payment "completely unrelated" to the importation would depend upon a profitable United States resale.

The government argues that the rulings upon which the plaintiff relies are irrelevant here. Post-*Generra*, the government avers, Customs applies the *Generra* criteria and does not follow HQ 543512 in the context of the price paid or payable or in the context of section 1401a(b)(1)(E) proceeds.  It argues that the plaintiff's reliance upon HRL 545420 (which relied on HQ 543512) is misplaced because Customs rulings before and after HRL 545420 applied the *Generra* interpretation of "price paid or payable," and furthermore because HRL 545420 was concerned with the issue of the dutiability of management payments as "assists" pursuant to 19 U.S.C. § 1401a(b)(1)(C) and (h), which the government contends are limited by statute to matters possessing a "relationship to the production process of the imported merchandise."  Def's Sur-Reply at 5.  The government argues that the management fees in issue in HQ 543512 and HRL 545420 "could not, by statute, be dutiable as assists."  *Id*.  The government also contends that the plaintiff's position is contrary to *Nissho Iwai American Corp. v. United States*, 16 CIT 86, 94, 786 F. Supp. 1002, 1010 (1992), wherein the court held that accounts receivable insurance paid by a parent to its U.S. subsidiary is dutiable.  16 CIT at 94, 786 F.Supp. at 1010, *rev'd on other grounds*, 982 F.2d 505 (Fed. Cir. 1992).  The government maintains that Customs' position here is in accordance with *Moss Manuf. Co. v. United States*, 896 F.2d 535, 538 (Fed. Cir. 1990) and *Generra*, *supra*, wherein the Court of Appeals for the Federal

Circuit held that costs or payments were part of statutory transaction value, even though they were

not part of the sales price of the merchandise, if they were made to the seller or for the benefit of the

seller. *Id* at 6. Finally, it contends that Customs rulings have followed *Generra*, both before and

after HRL 545420, to hold administrative and supervisor costs paid to the seller as part of the "price

paid or payable" or "proceeds" in the context of 19 U.S.C. § 1401a(b)(1)(E). *Id*. at 4, 7, referencing

HRL 545848 (Sep. 1, 1995); HRL 545500 (Mar. 24, 1995); HRL 544764 (Jan. 6, 1994); HRL

544701 (Mar. 1, 1993).

Customs' presumption that all payments made by a buyer to a seller are part of the price paid

or payable for imported merchandise is consistent with the holding of *Generra*, and the "directly

related" standard of 19 C.F.R. § 152.103(g) is not inconsistent therewith. *Cf.* 175 F.3d at 1340. To

the extent Customs' presumption appears inconsistent with 19 C.F.R. § 152.103(g), the regulation

has not been amended post-*Generra*, and the order of remand instructed Customs "to include such

proceeds as are appropriate for inclusion in the price actually paid or payable for the imported

merchandise" consistent with that regulation. The government, however, also contends that if

Customs cannot rely upon the presumption, and if the plaintiff is correct that some of the charge-

backs are not dutiable, then the plaintiff still has the statutory burden of proving the precise amounts

that are dutiable and which charge-backs must be added to the VWPC-VWPA price to arrive at the

proper statutory transaction value. It contends that VWPA has not borne its burden of proof on this

issue, and that without proof as to the precise amount of dutiable charge-backs for each entry there

can be no statutory transaction valuation. Def's Sur-Reply at 1-4. The Court is constrained to agree.

Even assuming *arguendo* it is appropriate to split the commission paid to Concept III between

VWPA and VWPC, there is insufficient information on the record for apportionment, and there is likewise insufficient information in the record for determining which charge-backs were dutiable and which were not. Transaction valuation on the basis of the VWPA-VWPC transfer prices therefore remains problematic.

*Deductive valuation.*

Regarding the deductive valuation alternative, the plaintiff maintains that in accordance with 19 U.S.C. § 1401a(g)(3), the amount of the general expenses and profits deduction that was derived from its certified audited financial statements cannot be rejected by Customs. It objects to the manner in which Customs has treated the issue, arguing that Customs did not, despite the plaintiff's repeated attempts to contact Customs after remand to determine what source documents would satisfy Customs' concerns over the proffered deductive value statement, work with the plaintiff, as mandated by the remand order, to resolve the issue. The plaintiff complains that Customs issued a vague request for "source documents" in its "eleventh hour" letter of October 23, 2001 before the remand report was due. The plaintiff argues this was tantamount to a request for all of its business records for the period concerned.

Regarding the government's concerns over source documentation to support the plaintiff's deductive valuation claim, the plaintiff asserts that the government had 55 days from the Court's order to comply, and despite the plaintiff's attempt to confer with Customs on the matter, Customs waited until *after* the Court's denial of the government's motion for an extension of time to issue any request therefor to plaintiff's counsel and provided only two days to respond. The plaintiff argues that this was dilatory and that it was unreasonable to expect instant production of "source

documents"related to expenses and profits, as described in Customs' request , which was tantamount

to a request for *all* records, including purchase and sale invoices. The plaintiff argues that under the

circumstances, the Court should accept the audited financial statements of VWPA which are part of

the record of this proceeding as "more than adequate" to support the claimed deductive values. In

the alternative, the plaintiff requests a 30-day extension so that Customs may conduct its own

verification, independent of VWPA's independent auditors. Regarding the acceptability of VWPA's

claimed deductions, the plaintiff argues the burden is upon the government to prove that they are

inconsistent with the class or kind, not on VWPA to prove that they are consistent with the class or

kind. The plaintiff argues there is no basis in the record for ignoring the statutory preference for use

of VWPA's general expenses and profits in calculating a deductive value for the imported

merchandise, and it further criticizes Customs for raising the issue of "greatest aggregate quantity"

in its report without requesting this information from the plaintiff. It contends that such information

has always been in the record in any event, since the entry documents in this case and in those on the

suspension disposition calendar indicate all the relevant VWPA's resale prices over the period.

Regarding the plaintiff's response to request for source documents to support deductive

valuation, Customs continues to believe that the summary documents provided at trial are

insufficient to determine deductive value. Accordingly, Customs adheres to its conclusions as set

forth in its remand report. The government contends that the plaintiff's inability to provide

deductive value information was due to its own lack of cooperation, not the government's. The

plaintiff *opposed* the government's motion for the extension of time that was ultimately denied by

the Court. The government states that the two-day deadline that Customs gave to the plaintiff to

provide the source documentation to support deductive valuation was the result of the Court's denial

of the government's motion. The government explains as follows.

> Because Customs did not know whether deductive value information would be needed from VWPA to determine the appraised value until after Customs had received and analyzed the data regarding transaction value of identical or similar merchandise, customs did not request deductive value information from VWPA immediately after issuance of the Court's remand order. These delays were compounded by the following facts: counsel for defendant was out of town taking numerous depositions in a variety of cases during this period; shortly after counsel returned, the World Trade Center attack occurred on September 11; our offices were closed from September 11, 2001, until September 24, 2001; when we returned, we were seriously hampered by the lack of telephone lines and e-mail capability until well into October, and the need to catch up with many deadlines; the ability to communicate with Customs was seriously hampered, and it was not until well into October that we were able to complete the copying and transmission of the trial record and exhibits to Customs in Washington, DC[.]

Def.'s Sur-Reply at 13-14. In sum, the government maintains, without the source documentation

it cannot agree to the proffered deductive values.

Customs' position on the acceptability of the plaintiffs' certified financial statements appears

rather draconian, however the situation is apparently one in which the plaintiff bears some

responsibility for opposing the government's motion for extension of time. In the final analysis, the

Court concludes that the plaintiff has not borne its burden with respect to proving the reliability of

its proposed deductive valuation method.

*VWPA-U.S. purchaser transaction valuation; fall-back valuation*.

The plaintiff argued that there is sufficient information on the record for appraisement on the

basis of either transaction or deductive valuation and therefore the fallback method of appraisement

is improper. That does not appear to be the case, however the government argues that if transaction

valuation on the basis of the VWPC-VWPA sales was not possible, the "next statutory value" is the transaction value between VWPA and the U.S. purchasers, according to the appellate court's remand decision. *See* 175 F.3d at 1334 ("The government is correct that if sales by VWPC to VWPA cannot serve as the basis for transaction value, then transaction value must be based upon sales by VWPA to its U.S. customers. *See* 19 U.S.C. § 1401a(a)(1)(B).").

The Court rejects the government's argument that the appellate decision mandated that the "next statutory value" is the transaction value between VWPA and the U.S. purchasers pursuant to 19 U.S.C. § 1401a(a)(1(B). The appellate court also decided that the VWPC-VWPA sale was a "sale for exportation" within the meaning of 19 U.S.C. § 1401a(b)(1) and therefore was a possible basis for transaction valuation. 175 F.3d at 1339. The government's argument here raises the question of whether the VWPA-U.S. purchase sale was *also* a "sale for exportation" within the meaning of 19 U.S.C. § 1401a(b)(1). That position that does not, at first blush, appear unreasonable, given that importation by VWPA was dependent upon and was caused by the acceptance of an order from a U.S. purchaser, however subsection (a)(1)(B) states that if valuation under subsection (A)[12] cannot be determined or used, then Customs must look to the "transaction value of identical merchandise provided for under subsection (c) of this section[.]" 19 U.S.C. § 1401a(a)(1)(B). Subsection (c) states, *inter alia*, that "with respect to the merchandise being appraised[,]" the transaction value of "identical" or "similar" merchandise that is "exported to the United States at or about the time that the merchandise being appraised is exported to the United States" may be acceptable. 19 U.S.C. § 1401a(c)(1). Subsection (c)(2), moreover, states that:

---

[12]  *I.e.*, the transaction value of the imported merchandise determined under 19 U.S.C. § 1401a(b)(1).

> Transaction values determined under this subsection shall be based on sales of identical merchandise or similar merchandise, as the case may be, at the same commercial level and in substantially the same quantity as the sales of the merchandise being appraised. If no such sale is found, sales of identical merchandise or similar merchandise at either a different commercial level or in different quantities, or both, shall be used, but adjusted to take account of any such difference. Any adjustment made under this paragraph shall be based on sufficient information. If in applying this paragraph with respect to any imported merchandise, two or more transaction values for identical merchandise, or for similar merchandise, are determined, such imported merchandise shall be appraised on the basis of the lower or lowest of such values.

19 U.S.C. § 1401a(c)(2).

Subsection (c) transaction valuation thus contemplates resort to a different sale than the sale of the merchandise being appraised. The government's interpretation is incorrect because it involves not comparison but contemplation of the sale of the merchandise being appraised at the ultimate purchaser level.

Nonetheless, given that "[t]he government is correct that if sales by VWPC to VWPA cannot serve as the basis for transaction value, then transaction value must be based upon sales by VWPA to its U.S. customers", 175 F.3d at 1334, valuation on the basis of the VWPA-U.S. purchaser transaction under 19 U.S.C. § 1401a(f) appears to be the appropriate resolution of this matter.

### *Conclusion*

Judgment for the government will enter accordingly.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: March 20, 2003
         New York, New York