NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

03-1347

VWP OF AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

———————————————

DECIDED: November 24, 2004

———————————————

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Opinion dissenting-in-part filed by Circuit Judge MICHEL.

SCHALL, Circuit Judge.

DECISION

This is the second time this case has been before us. The present appeal follows a series of decisions by this court and the United States Court of International Trade over the last seven years. In the first of these cases, VWP of America, Inc. v. United States, 21 C.I.T. 1109 (1997) ("VWP I"), the Court of International Trade upheld a determination by the United States Bureau of Customs and Border Protection[1]

_____

[1]     At the time of the dispute, this agency was known as the United States

("Customs") that woolen melton fabrics imported by Victor Woolen Products of America, Inc. ("VWPA") should be appraised for duty purposes based on the price paid for the fabrics by customers of VWPA in the United States. In its decision, the court rejected VWPA's contention that the fabrics should be appraised based on the price paid for them by VWPA to its supplier and parent company, Victor Woolen Products, Ltd. of Quebec, Canada ("VWPC"). VWPA appealed to us.

In VWP of America, Inc. v. United States, 175 F.3d 1327 (Fed. Cir. 1999) ("VWP II"), we ruled that the Court of International Trade had erred in VWP I in its analysis of the pertinent requirements of 19 U.S.C. § 1401a (1994), the statute that governs the valuation of imported merchandise for purposes of appraisal by Customs. We also ruled that the court had failed to make necessary findings of fact. Accordingly, we vacated the court's decision and remanded the case for further proceedings.

Following our remand, the Court of International Trade in turn remanded the case to Customs with instructions. VWP of Am., Inc. v. United States, 163 F. Supp. 2d 645 (Ct. Int'l Trade 2001) ("VWP III"). On remand, Customs determined that the melton fabrics at issue should be appraised based on the price paid for them by VWPA's customers in the United States. In VWP of America, Inc. v. United States, 259 F. Supp. 2d 1289 (Ct. Int'l Trade 2003) ("VWP IV"), the court sustained Commerce's determination. VWPA once more appeals to us. For the reasons set forth below, we

_____

(Cont'd. . . .)
Customs Service. It is now a division of the U.S. Department of Homeland Security. Effective March 1, 2003 it was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308; Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, at 4 (2003).

affirm-in-part, vacate-in-part, and remand.

DISCUSSION

I.

Section 1401a of title 19 provides the method by which imported merchandise is to be appraised. It sets forth one primary method of valuation and five secondary methods:

> (a) Generally
>> 1. Except as otherwise specifically provided for in this chapter, imported merchandise shall be appraised . . . on the basis of the following:
>>> A. The transaction value provided for under subsection (b) of this section.
>>> B. The transaction value of identical merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (A) cannot be determined, or can be determined but cannot be used by reason of subsection (b)(2) of this section.
>>> C. The transaction value of similar merchandise provided for under subsection (c) of this section, if the value referred to in subparagraph (B) cannot be determined.
>>> D. The deductive value provided for under subsection (d) of this section, if the value referred to in subparagraph (C) cannot be determined and if the importer does not request alternative valuation under paragraph (2).
>>> E. The computed value provided for under subsection (e) of this section, if the value referred to in subparagraph (D) cannot be determined.
>>> F. The value provided for under subsection (f) of this section, if the value referred to in subparagraph (E) cannot be determined.

Id. § 1401a(a) (emphases added).

As indicated, the preferred source of Customs' valuation of imported merchandise is the transaction value of the merchandise itself. Id. § 1401a(a)(1)(A). The "transaction value" is "the price actually paid or payable for the merchandise when sold for exportation in the United States," plus certain amounts. Id. § 1401a(b)(1). In the event that the transaction value of the imported merchandise cannot be calculated, the merchandise should next be appraised based on the transaction value of identical or similar merchandise. See id. §§ 1401a(a)(1)(B) & (C). This transaction value must be calculated from imported merchandise that is "(A) with respect to the merchandise being appraised, either identical merchandise or similar merchandise, as the case may be; and (B) exported to the United States at or about the time that the merchandise being appraised is exported to the United States." Id. § 1401a(c)(1).

The next preferred appraisal value, if identical or similar merchandise is not available, is "deductive value." Id. § 1401a(a)(1)(D). Deductive value is equal to the resale price in the United States, less certain commissions, costs, and duties. Id. § 1401a(d)(3)(A). If deductive value, too, is unavailable, Customs may turn to "computed value," id. § 1401a(a)(1)(E), which reflects the sum of production and material costs of the imported merchandise, plus profits and general expenses from sales of merchandise of the "same class or kind as the imported merchandise," id. § 1401a(e)(1). In the event that none of the valuation methods described in section 1401a(a)(1)(A)-(E) can be used, Customs may resort to section 1401a(f), id. § 1401a(a)(1)(F), which permits appraisal based on "a value that is derived from the methods set forth in . . . subsections [(b) through (e)], with such methods being reasonably adjusted to the extent necessary to arrive at a value," id. § 1401a(f)(1).

II.

The background to this particular valuation dispute has been extensively recounted in our previous opinion and the opinions of the Court of International Trade. We recite here only those facts that are relevant to this appeal.

Prior to the formation of VWPA in 1989, VWPC interfaced directly with its U.S. customers. After it was formed, VWPA acted as a middleman between VWPC and its U.S. customers, facilitating two independent transfers of merchandise—the first between VWPC and VWPA, and the second between VWPA and its U.S. customers. In 1990, a competitor alleged that the subsidiary corporation, VWPA, was being improperly used by VWPC to avoid paying import duties on its fabrics. VWP I, 21 C.I.T. at 1110. As a result, Customs initiated the present investigation. In its final ruling, HQ 544745, Customs determined that "no bona fide sale occurred between [VWPC] and VWPA. Title passed directly from [VWPC] to the U.S. customer." Customs therefore appraised the fabric based on the price paid by the U.S. customer to VWPA, pursuant to 19 U.S.C. § 1401a(f). Id.

In its first appeal to the Court of International Trade, VWPA contested this ruling and valuation by Customs. In VWP I, the Court of International Trade considered "whether the transaction between VWPC and VWPA was at arm's length, i.e., was it a bona fide sale or did VWPA act as a mere agent of VWPC, rendering the sale between the parent and its subsidiary a fiction." Id. at 1112. The court found a "formidable showing" that the transaction between VWPA and VWPC was not conducted "at arm's length." Id. at 1114. Given that VWPA was "merely an alter ego" of VWPC and a valid sale had not occurred, the court ruled that sales from VWPC to VWPA could not serve

as the basis for transaction value pursuant to 19 U.S.C. § 1401a(b). The court therefore sustained Customs' appraisal.

On appeal, we vacated the decision in VWP I and remanded the case. VWP II, 175 F.3d at 1330. In VWP II, we rejected the Court of International Trade's use of legal standards derived from the previous statutory scheme. Instead, we held that the means provided by Congress in section 1401a for evaluating related party transactions were exclusive, and we directed the court's analysis to the statutory factors. We also held that certain sales of fabric by Cookshiretex, a Canadian supplier of melton fabrics, to Lou Levy & Sons ("Levy"), a U.S. corporation, presented by VWPA pursuant to subsection 1401a(b)(2)(B)(i) as comparable transaction values, indeed constituted "transaction values" under the statute.[2] We did not, however, rule on whether the other requirements of the statute were met, specifically (1) that Cookshiretex and Levy were unrelated parties; (2) that the merchandise in the Cookshiretex-Levy sales was similar to the merchandise at issue in this case; and (3) that the VWPC-VWPA transaction value "closely approximate[d]" that of the Cookshiretex-Levy transaction. Id. at 1342.

We then specified the terms of our remand to the Court of International Trade. We first instructed the court to consider whether various costs and expenses (charge backs and commissions) had to be added to "the price actually paid or payable" for the melton fabrics to determine "transaction value" for the VWPC-VWPA sales pursuant to section 1401a(b)(1). Id. at 1343. Second, assuming a transaction value for VWPC-VWPA sales could be established, we stated that the court was to apply the three-prong

---

[2]    VWPA presented the Cookshiretex-Levy sales in an effort to meet the test for a related parties transaction value set forth in 19 U.S.C. § 1401a(b)(2)(B)(i).

test set forth in subsection 1401a(b)(2)(B)(i) to determine whether the related party transaction value submitted by VWPA, the Cookshiretex-Levy transaction value, could be used for appraisal purposes.  Id.  Finally, we stated that if on remand the issues of deductive and computed value became relevant for purposes of a related parties transaction analysis pursuant to 19 U.S.C. § 1401a(b)(2)(B)(ii), the Court of International Trade was to make the findings and undertake the analysis necessary to support its determination that those values were unacceptable.[3]  Id.

### III.

In VWP III, the Court of International Trade considered the questions posed by our decision in VWP II and remanded the case to Customs for further proceedings.  163 F. Supp. 2d at 647.  As noted above, when Customs' remand determination was complete the court considered Customs' findings and ultimately affirmed, entering judgment in the government's favor.  VWP IV, 259 F. Supp. 2d at 1302.  The court thus affirmed Customs' appraisal of the melton fabrics based upon the prices paid for the fabrics to VWPA by its U.S. customers.  On VWPA's second appeal to us, we consider several issues.

A.  Charge Back Expenses and Commissions paid to Concept III

Section 1401a(b)(1) sets forth the most preferred method of valuation, in which the transaction value of the imported merchandise represents the sum of "the price actually paid or payable for the merchandise when sold for exportation to the United States," plus certain amounts.  The government alleged that two costs—the charge

---

[3]    In VWP I, the court had rejected the use of deductive and computed value for this purpose.  21 C.I.T. at 1117.

backs paid from VWPA to VWPC and the commission paid to Concept III, a selling agent—should be added to the "price actually paid or payable" pursuant to subsections 1401a(b)(1)(E) and (B), respectively. The Court of International Trade determined that the statute encompassed both expenses and remanded the case to Customs to determine the amounts of those expenses. VWP III, 163 F. Supp. 2d at 657. Ultimately, Customs found that neither the amount of charge backs nor the amount of the commission could be sufficiently established, as the statute requires. See 19 U.S.C. § 1401a(b)(1)(ii) (explaining that the amounts of the items listed in subsections 1401a(b)(1)(A)-(E) must be "based on sufficient information" and requiring that if, for whatever reason, such information is unavailable, "the transaction value of the imported merchandise . . . be treated, for purposes of this section, as one that cannot be determined"). The Court of International Trade affirmed this determination in VWP IV. 259 F. Supp. 2d at 1299.

Before considering whether charge backs and commission expenses are properly viewed as additions to "the price actually paid or payable" under subsections (E) and (B), it first must be established that the amounts are not already included in "the price actually paid or payable." See 19 U.S.C. § 1401a(b)(1)(i) (explaining that these costs are only to be added "to the extent that each such amount is not otherwise included within the price actually paid or payable"). The scope of "the price actually paid or payable" is defined in relevant part in 19 U.S.C. § 1401a(b)(4) as "the total payment . . . made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller." Thus, before it was permitted to consider whether the charge backs and commissions fell within subsections (E) and (B), the Court of International

Trade first had to find that those amounts were not already included in the price paid by VWPA to VWPC. Although this finding was not explicit, we conclude that it was indeed made by the court in VWP III. Specifically, we rely on the court's instruction to Customs to add these items to the price actually paid or payable, if appropriate:

> Obviously, all of VWPA's revenues were "proceeds" of the "subsequent resale, disposal, or use of the imported merchandise", some of which were remitted to VWPC for services rendered and fees expended in fulfilling VWPA's obligations to U.S. purchasers of Victor Woollen Product fabrics in advance of importation. The Court considers such payments to fall within the ambit of "proceeds" in accordance with the plain meaning of 19 U.S.C. § 1401(a)(b)(1)(E) [sic]. Customs requires proceeds to be "directly related" to importation to be dutiable. 19 C.F.R. § 152.103(g) (1992). It will therefore be instructed to include such proceeds as are appropriate for inclusion in the price actually paid or payable for the imported merchandise.

VWP III, 163 F. Supp. 2d at 654 (footnote omitted). From the court's instruction to Customs, we conclude that it must have found section 1401a(b)(4) to be satisfied—that is, that the charge backs and commissions were not already included in the "price actually paid or payable" as defined by that section.

We therefore may focus our inquiry on the following questions—(1) whether the Court of International Trade properly deemed the charge backs and the commissions appropriate additions under subsections 1401(a)(1)(E) and (B); and (2) whether Customs properly conducted its analysis for each of these items on remand from the court.

We consider first the issue of the charge backs. Although the direction provided to Customs by the court in VWP III—that only proceeds "directly related" to importation be added to the price paid or payable under section (E)—was correct, Customs did not

03-1347                                     9

faithfully implement that instruction. Instead, Customs interpreted VWP III to require that it determine both whether the charge backs qualified under subsection (b)(1)(E) and under section (b)(4). Devoting the majority of its analysis to the latter question, Customs applied this court's decision in Generra Sportswear Co. v. United States, 905 F.2d 377 (Fed. Cir. 1990), to conclude that the charge backs were properly included in the "price actually paid or payable." As the Court of International Trade noted, Customs' reliance on Generra led to the application of a "completely unrelated" standard, rather than its typical "directly related" standard. VWP IV, 259 F. Supp. 2d at 1297-98. Itself relying on Generra, however, the court then approved that standard as not inconsistent with the "directly related" requirement of 19 C.F.R. § 152.103(g). Id. at 1299.

We disagree with Customs' method of analysis and the court's affirmance of that method in VWP IV. In VWP III, the court correctly focused Customs' analysis on subsection 1401a(b)(1)(E) by instructing Customs to consider whether the charge backs were "directly related" to importation. Customs, however, deviated from this directive by instead conducting a section 1401a(b)(4) analysis based on Generra. As we have discussed, the Court of International Trade in VWP III had necessarily concluded that the charge backs were not included in "the price paid or payable" as defined in section (b)(4), and had proceeded to consider only the possibility of an addition under subsection (b)(1)(E). Generra and section (b)(4) are simply not relevant to any analysis of a subsection (b)(1)(E) issue and should have been excluded from Customs' consideration.

On the issue of the Concept III commissions, however, we affirm.  Subsection 1401a(b)(1)(B) describes, as an addition to the price paid or payable, "any selling commission incurred by the buyer with respect to the imported merchandise."  By regulation, Customs has defined "selling commission" as "any commission paid to the seller's agent, who is related to or controlled by, or works for or on behalf of, the manufacturer or the seller."  19 C.F.R. § 152.102(b).  In contrast, fees paid to a true buying agent, who represents and is controlled by the importer, are not dutiable.  The Court of International Trade found that Concept III was sufficiently related to VWPC, the seller, to justify the inclusion of this commission in the dutiable price.  We review the court's legal determination of "selling commission" de novo, and the question of whether the facts support an application of subsection (b)(1)(B) in this context for clear error. See F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1031 (Fed. Cir. 2000).

As in VWP I, in VWP III the Court of International Trade again was unimpressed by VWPA's nominal independence from its parent, VWPC.  VWP III, 163 F. Supp. 2d at 655 ("The Court's impression of the evidence adduced at trial is that activation of VWPA in 1989 did not appreciably alter Concept III's perception of the entity it was assisting.").  Applying the terms of the Customs regulation, the court found that, despite the change in corporate structure, Concept III still was "controlled by" and/or  "work[ed] . . . on behalf of" VWPC.  Id. at 654-55.  Consequently, the court ruled that the commission amount had to be added to the transaction values pursuant to subsection 1401a(b)(1)(B).  Id. at 657.  It then remanded to Customs the question of whether those amounts could be satisfactorily determined.  Back before the court in VWP IV, VWPA

argued that if the commission amount had to be added, it should at least be apportioned between VWPC to VWPA to reflect the division of Concept III's labor on behalf of each entity. Finding insufficient information on the record to support apportionment, the court concluded that subsection 1401a(b)(1)(ii) prevented valuation of the transaction pursuant to section 1401a(b).

On appeal, VWPA argues that the series of rulings by the Court of International Trade were incorrect. It primarily challenges the court's finding of an agency relationship between VWPC and Concept III, and contends that Concept III worked on behalf of VWPA only.

In Moss Manufacturing Co., Inc. v. United States, 714 F. Supp. 1223 (Ct. Int'l Trade 1989), aff'd 896 F.2d 535 (Fed. Cir. 1990), the Court of International Trade elaborated on the meaning of "selling commission" in subsection 1401a(b)(1)(B). It relied on common law agency principles to distinguish a buying commission (not dutiable) from a selling commission (dutiable):

> One court has noted that the distinction between a buying and a selling commission is "whether the expense is associated with selling or producing the merchandise, rather than some ministerial function in procuring the goods." . . . Plaintiff has the burden of proving both the existence of the principal-agent relationship as well as that the monies paid were, in fact, bona fide buying commissions. "The bedrock upon which the bona fides are based is the establishment of the buying agency relationship with respect to the subject transaction." The threshold question is the "right of the principal to control the agent's conduct with respect to matters entrusted to him." However, in deciding whether an alleged agency relationship is bona fide the Court must examine all relevant factors. These factors include: the right of the principal to control the agent's conduct; the transaction documents; whether the importer could have purchased directly from the manufacturers without employing an agent; whether the intermediary was operating an independent

business, primarily for its own benefit; and, the existence of a buying agency agreement.

Id. at 1228-29 (citations omitted).

Applying the reasoning of Moss to the case at hand, we agree with the government that the Court of International Trade was free to look beyond corporate formalities to ascertain whether VWPC continued to control Concept III's selling activities. The official transfer of authority from a parent company to its subsidiary does not necessarily mean that it has divested itself of all actual control over the selling agent. The definition of "selling commission" should not be limited according to corporate structure. We also decline to disturb the court's application of that definition to the facts of this case. We do not find clear error in the court's determination that VWPC continued to control Concept III's selling activities. For these reasons, we affirm.

Therefore, despite the errors noted above in the Court of International Trade's treatment of the charge backs, we agree with the court that transaction value, 19 U.S.C. § 1401a(b), cannot serve as a basis for valuation. Because the amount of the Concept III commission—a mandatory addition to the price paid or payable—could not be determined by Customs, section 1401a(b) cannot serve as a basis for valuation. See 19 U.S.C. § 1401a(b)(1)(E)(ii) ("If sufficient information is not available, for any reason, with respect to any amount referred to in [subsections 1401a(b)(1)(A) through (E)], the transaction value of the imported merchandise concerned shall be treated, for purposes of this section as one that cannot be determined." (emphases added)).

This finding moots two other points raised by our remand in VWP II. First, we need not determine whether the Cookshiretex-Levy sales can serve as related parties transaction values under subsection 1401a(b)(2)(B). Second, our instruction that the

court present appropriate factual findings to support its "determin[ation] that VWPA's deductive and computed value calculations were unacceptable for purposes of the [related parties] analysis required under 19 U.S.C. § 1401a(b)(2)(B)(ii)" is similarly mooted. In short, because the VWPC-VWPA transactions are unacceptable for the reason stated above, we need not consider whether the corporate relationship between VWPC and VWPA disqualifies the transaction as well.

B. Deductive Value under 19 U.S.C. § 1401a(d)

As just seen, because VWPA failed to establish a transaction value for the sales between VWPC and VWPA, it could not seek to establish a related parties transaction value under 19 U.S.C. § 1401a(b)(2)(B) based upon either the Cookshiretex-Levy sales, 19 U.S.C. § 1401a(b)(2)(B)(i), or deductive or computed value, 19 U.S.C. § 1401a(b)(2)(B)(ii). That does not end the case, however. Following VWP III, VWPA urged in the alternative valuation of the imported melton fabrics based upon deductive or computed value pursuant to 19 U.S.C. § 1401a(d) or § 1401a(e). The Court of International Trade noted: "The deductive or computed values were also proffered in the alternative, in the event that the transaction value of the imported fabrics was determined unacceptable." See VWP III, 163 F. Supp. 2d at 669. The court concluded its opinion in VWP III by directing "the parties to work together diligently to resolve Customs' alleged concerns regarding inconsistencies and source documentation." Id. at 669. The August 29, 2001 remand order accompanying the opinion stated that "Customs shall have 60 days to comply with the terms of this order and report the results to the Court."

Before Customs, VWPA chose deductive value as its alternative approach. Subsection 1401a(d)(3)(A) instructs that, to calculate deductive value, certain deductions are taken from unit price. See 19 U.S.C. § § 1401a(d)(3)(A)(i)-(v). In subsection 1401a(d)(3)(B), it is stated that "the deduction made for profits and general expenses [pursuant to subsection 1401a(d)(3)(A)(i)] shall be based upon the importer's profits and general expenses, unless such profits and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind, in which case the deduction shall be based on the usual profit and general expenses reflected in such sales and determined from sufficient information . . . ." (emphases added).

On September 5, 2001, VWPA's counsel wrote Customs, asking Customs to promptly advise VWPA of the Customs personnel handling the remand order. VWPA noted that "the clock [was] ticking" on compliance with the VWP III remand order deadline. A few days later, on September 10, Customs identified the personnel responsible for handling the remand. Thereafter, on September 17, the parties discussed their understanding of the VWP III remand order by telephone. The next day, VWPA wrote to Customs, memorializing the conversation, and expressing its understanding of the remand order. On the issue of deductive value, VWPA's counsel mentioned the need to settle "the government's concerns over 'source documentation.'" Customs subsequently asked the Court of International Trade to clarify its remand order. Customs also asked the court for an extension of time to comply with the order. The court denied both requests. On October 23, just a few days before its remand determination was due, Customs wrote VWPA and asked for more detailed information.

Customs stated that for VWPA's merchandise to be appraised using deductive value, VWPA would have to provide

> [s]ource documentation to support plaintiff's preferred method (i.e., source documentation pertaining to either the deductive or computed value figures in plaintiff's exhibits 55 and 50 with special attention given to the source documents relating to the claimed profit and general expense figures).

Customs also stated that if VWPA selected deductive value, it was to provide

> evidence that the profit and general expense figures are consistent with those usually made in connection with sales in the United States of imported merchandise that is of the same class or kind.

In its October 25, 2001 response, VWPA pointed to source documents already in evidence that it considered sufficient to meet this request:

> Plaintiff's deductive value exhibit (Pl. Ex. 55) is based on documentation submitted at trial. The deductions for VWP of America's general expenses and profits are derived directly from the audited financial statements of the company (Pl. Ex. 58). Specifically, the income statement for VWP of America for the year ended November 30, 1993 indicates that the selling and administrative general expenses of VWP of America were 12.5% of sales and the profits before taxes were 12.1% of sales. The same percentages were used on the deductive value exhibit for the general expenses and profits deductions. The deductions for non-dutiable charges were derived from entry documents.

With respect to Customs' request that VWPA confirm, through additional documentation, that its profit and general expense figures were consistent with those of other importers of merchandise of the same class or kind, VWPA argued:

> The deductive value statute states that "the deduction made for profits and general expenses shall be based upon the importer's profits and general expenses, unless such profits and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind…" 19 U.S.C. § 1401a(d)(3)(B)(i). There

03-1347                                16

was no testimony or any other evidence at trial that VWP of America's general expenses and profits were inconsistent with those reflected in sales in the United State of imported merchandise of the same class or kind. On the contrary, Mr. Gosselin testified that he had completed 50 Customs audits at the time of the trial (Tr. 432), and that the VWPC-VWP of America business arrangement was fairly common. Tr. 492. Mr. Gosselin also expressed no criticisms of the deductive value schedules and stated that they may be entirely accurate. Tr. 452-43. Therefore, there are no grounds for ignoring the statutory preference for use of the importer's profits and general expenses in this case.

In its remand determination dated October 29, 2001, Customs rejected VWPA's deductive value claim as follows:

[N]o additional documents regarding the deductive value calculation set forth in Exhibit 55 were submitted. Nor was any evidence provided to show that the profit and general expenses figures are typical of importers of fabrics of the same class of same class [sic] or kind.
Without this information, Customs cannot determine the deductive value of the merchandise at issue.

In its December 12, 2001 update to its remand determination, Customs stated: "Customs continues to believe that the summary documents provided at trial are insufficient to determine the deductive value."

On appeal to the Court of International Trade after the remand determination, VWPA complained that what it characterized as Customs' "vague request" of October 23 for source documentation was issued just two days before the remand determination was due. VWP IV, 259 F. Supp. 2d at 1299-1300. In addition, VWPA urged that the language of 19 U.S.C. § 1401a(d)(3)(B) placed upon Customs the initial burden of demonstrating that VWPA's profits and general expenses were inconsistent with those arising from sales in the United States of imported merchandise of the same class or kind before VWPA was obligated to prove that its figures were indeed typical. Id. at

1300. Finally, VWPA contended that source documentation had always been available to Customs "since the entry documents in this case and in those on the suspension disposition calendar indicate all the relevant VWPA resale prices over the period." Id. In response, Customs maintained that VWPA had submitted only "summary documents" that were insufficient to establish deductive value. Id. Customs also maintained that the two-day deadline which it gave VWPA to provide source documentation to support deductive valuation was the result of the Court of International Trade's denial of its request for an enlargement of time to submit the remand determination and the extreme disruption caused by the terrorist attack of September 11th. Id.

The Court of International Trade ruled in favor of Customs on deductive value. The court stated:

> Customs' position on the acceptability of plaintiffs' certified financial statement appears rather draconian, however the situation is apparently one in which the plaintiff bears some responsibility for opposing the government's motion for extension of time. In the final analysis, the Court concludes that the plaintiff has not borne its burden with respect to proving the reliability of its proposed deductive valuation method.

VWP IV, 259 F. Supp. 2d at 1301.

It appears from the record that, due to a combination of circumstances, the parties failed to follow the Court of International Trade's mandate to "work together diligently to resolve Customs' alleged concerns regarding inconsistencies and source documentation." Id. at 669. There apparently was never a meeting of the minds as to what source documentation VWPA was required to submit to Customs. Customs did not express which documents it desired until its October 23 letter, just a few days before

03-1347                                    18

the remand determination was due. In that letter, Customs asked for "source documentation pertaining to either the deductive or computed value figures in plaintiff's exhibits 55 and 50 with special attention given to the source documents relating to the claimed profit and general expense figures." On October 25, VWPA correctly responded that Exhibit 58, among others, <u>was</u> source data for Exhibit 55 - the profits figures in Exhibit 58 form the basis for the deductive value computation in Exhibit 55. However, Customs' October 23 letter was probably asking for the source documentation for, among others, <u>Exhibit 58</u>, which was itself a summary document (a financial statement) compiled from other documents. Customs' October 23 letter, while asking for source documentation for profits and general expenses figures, did not specify that it wanted a level of source documentation deeper than VWPA's understanding. VWPA may have been confused because Customs' October 23 letter refers to source documentation for Exhibits 50 and 55, and not to source documentation for exhibits such as Exhibits 58 and 60.

We do not fault Customs for its clear efforts to comply with the remand order in a timely manner. Neither do we fault VWPA for expecting that, given the Court of International Trade's order to "work diligently together" to resolve the source documentation issue, Customs could have been clearer in its request for more particular documents. In any event, what we think the case comes down to is this: While it can be argued that Customs and VWPA should have been more diligent in various respects, the unforeseeable events of September 11th clearly disrupted Customs to such an extent that it was not possible for the parties to "work diligently together" during the critical period to resolve the matter of supporting documentation for VWPA's deductive

value claim. Under these circumstances, a remand to Customs is the best course.

Finally, VWPA argues that pursuant to 19 U.S.C. § 1401a(d)(3)(B)(i), Customs was required to demonstrate that VWPA's profits and general expenses were inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind before VWPA was obligated to prove that its figures were indeed typical. According to VWPA, the effect of the statutory clause "unless such profits and general expenses are inconsistent with those reflected in sales in the United States of imported merchandise of the same class or kind," 19 U.S.C. § 1401a(d)(3)(B)(i), is to impose upon Customs the burden of making some showing that an importer's figures are inconsistent with those relating to the same class or kind of merchandise, rather than placing this burden upon the importer in the first instance. We need not address this issue, however, because it may be rendered moot by what happens on remand. If, following the remand to Customs, the issue becomes pertinent, it will be addressed in the first instance by the Court of International Trade.

CONCLUSION

We see no error in the Court of International Trade's ruling that the amount of the Concept III commissions could not be established. We therefore agree that section 1401a(b) cannot serve as a basis for valuation of the imported merchandise. Accordingly, we affirm the court's decision in that regard. However, we vacate the decision of the Court of International Trade on the deductive value issue and remand the case to the court, with the instruction that the court remand the case to Customs to consider valuation of the imported merchandise pursuant to 19 U.S.C. § 1401a(d) in

accordance with this opinion.[4]

---

[4] We have considered various other arguments raised by the parties and have found them to be without merit.

03-1347                          21

NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

## United States Court of Appeals for the Federal Circuit

03-1347

VWP OF AMERICA, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

MICHEL, <u>Circuit Judge</u>, dissenting-in-part.

I join the opinion in all respects, except Section III.B, ordering a remand regarding deductive value documents.  The majority remands based on a perceived misunderstanding by VWPA as to the meaning of "source documents" for its deductive value figure found in Exhibit 55, a summary.  The deductive value of imports depends critically on profits and general expenses, which are shown in Exhibit 55.  Specifically, the majority speculates that "VWPA may have been confused because Customs' October 23 letter refers to source documentation for Exhibits 50 and 55, and not to source documentation for exhibits such as Exhibits 58 and 60."  Exhibit 58, for example, contains VWPA's annual financial statements and is thus itself a summary, from which the expense and profit figures in or underlying Exhibit 55 are taken.  The majority further theorizes that "[w]hile it can be argued that Customs and VWPA should have been more diligent in various respects, the unforeseeable events of September 11th clearly disrupted Customs to such an extent that it was not possible for the parties to 'work

diligently together' during the critical period to resolve the matter of supporting documentation for VWPA's deductive value claim."

I believe we should not assume such a misunderstanding and thus excuse VWPA's refusal to make available source documentation to support its deductive value summary, Exhibit 55. Nor should we accept VWPA's contention that supporting that summary with other summaries, i.e., Exhibits 56-61, suffices under the statute, despite Customs' repeated demands for actual "source documents." Because in my judgment, the Court of International Trade ("CIT") clearly directed in VWPA III that true "source" documents be produced, I disagree with remanding this case so that Customs can tell VWPA — again — that it requires transaction documents, such as daily journals, not just annual summaries, to support VWPA's asserted profit and general expense figures and hence its claimed deductive value figure.

I.

In VWPA III, the CIT explained that "the government argues that the exhibits supporting the deductive and computed value calculations are themselves summary information and that the plaintiff failed to provide the source documents . . . ." VWP of Am., Inc. v. United States, 163 F. Supp. 2d 645, 663 (Ct. Int'l Trade 2001) (emphasis added). The CIT discussed in detail the bases for the government's claim of "arguable inconsistencies and unsupported figures appearing in Plaintiff's Exhibits 50 to 61," noting the government's alleged inability to verify the figures provided and the lack of detail to reconstruct those figures. Id. at 664 n.35 (emphasis added). "That, and the fact that various 'drafts' of deductive values with differing unit prices, general expenses, and/or profits were created, the government contends, emphasizes the need for

2

underlying data without which, the government further argues, the allocations or elements of deductive values and computed values proposed by VWPA are per se unreliable." Id. Further, the CIT concluded that "[t]he record lacks objective reference from which to infer that VWPA's and/or VWPC's claimed profits and expenses are typical of importers and/or producers of fabrics of the same class or kind. . . ." Id. at 669.

The majority points to the trial court's language directing the parties "to work together diligently to resolve Customs' alleged concerns regarding inconsistencies and source documentation." This language, however, in no way implies that the parties must negotiate the types of documentation necessary to verify the accuracy of VWPA's summary documents, such as Exhibits 55 and 58. Such an implication would be unwarranted in view of the protracted history of this case. Rather, the trial court's instructions can only be read as rebuking VWPA for its refusal to produce the source documents first requested at the time of trial in 1996. After all, in the same concluding paragraph of its opinion, the CIT also made plain that the record "lacks the source documentation which would resolve apparent discrepancies and reconcile certain amounts claimed." Id. (emphasis added). In any event, considering the specific arguments made by Customs and the specific treatment of those arguments by the CIT in VWPA III in 2001, the majority's conclusion that VWPA somehow misunderstood its duty on remand is not sound.

The majority is correct that not all the cooperation ordered by the CIT took place. There was, however, considerable correspondence. Ultimately, VWPA refused, despite

3

the CIT's unequivocal order and Customs' later letters, to prove the accuracy and normalcy of its summary figures in Exhibit 55 with source documents.

The majority quotes the correspondence between VWPA and Customs following the CIT's remand order as suggesting a misunderstanding as to the meaning of "source documentation." VWPA, however, does not argue to this court, and, indeed, did not argue below, that it did not understand what "source documentation" meant. Instead, VWPA claims that its values in Exhibit 55 were supported by Exhibits 56-61, which provided sufficient verification under the applicable statute. Yet, beyond argument, those purported source documents are themselves merely annual summaries, not shown to be contemporaneous with or to reflect specifically the transactions they purport to incorporate. Supporting one annual summary (Exhibit 55) with another (Exhibit 58) still denies Customs the opportunity to verify the underlying transactional documents.

No correspondence between VWPA and Customs can negate the explicit instructions of the CIT that VWPA produce source documents from which its annual figures in Exhibit 58 were derived. Given the CIT's discussion of these (among other) deficiencies in VWPA's Exhibits 50 through 61, Customs' repeated requests for source documentation underlying VWPA's deductive value in Exhibit 55 lack ambiguity. They could <u>only</u> mean the transaction data, such as that contained in daily journals, from which Exhibit 58 itself was compiled. Thus, nothing in this record warrants remand.

II.

The "re-remand" required by the majority also prolongs a dispute already far too old. Customs began its investigation of VWPA in 1990. The entries in issue occurred in

4

fiscal year 1993. Customs has already twice decided the very import duties the majority remands to it. The trade court has three times before heard this case, and our court has now decided it twice. Thus, in all, the matter already has been adjudicated five times by Article III courts and twice by an expert administrative agency. With this remand, the case now will go back for a fourth decision by the trial court and a third determination by Customs. Customs' decision will likely lead to a fifth decision in the trial court and a third appeal here, consuming yet additional time and money of the parties, agency, taxpayers and courts. A final result then may be still several years away. Hence, it may be the year 2007 before the correct duties for these 1993 shipments are finally determined. Fourteen years to get a final result! I consider this case history appalling. Prolonging this case is also unnecessary and, to me, unacceptable. After five prior court decisions over eight years and two Customs decisions, the first in the mid 1990's, we should simply stop the litigation merry-go-round. Therefore, from the remand, I respectfully dissent.